978 So.2d 1143 (2008)
STATE of Louisiana
v.
Clifton B. AYCHE.
No. 07-KA-753.
Court of Appeal of Louisiana, Fifth Circuit.
March 11, 2008.
Rehearing Denied April 14, 2008.
*1145 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Andrea F. Long, Laura S. Schneidau, Assistant District Attorneys, Parish of Jefferson, Gretna, Louisiana, for Plaintiff/Appellee.
*1146 Bruce G. Whittaker, Attorney at Law, Louisiana Appellate Project, New Orleans, Louisiana, for Defendant/Appellant.
Clifton Ayche, Jackson, Louisiana, pro se.
Panel composed of Judges EDWARD A. DUFRESNE, JR., CLARENCE E. McMANUS, and FREDERICKA HOMBERG WICKER.
FREDERICKA HOMBERG WICKER, Judge.
The defendant Clifton B. Ayche timely appeals his possession of cocaine conviction, a violation of La.R.S. 40:967(C) and his 30-year enhanced fourth felony offender hard labor sentence. Mr. Ayche was originally charged with possession with intent to distribute cocaine, a violation of La.R.S. 40:967(A). The jury convicted him of possession of cocaine, a responsive verdict to the charged offense. Mr. Ayche was sentenced to five years imprisonment at hard labor. That day, the state filed a fourth felony habitual offender bill of information. The defendant denied the allegations. Later, after a hearing, the trial judge found that Mr. Ayche was a fourth felony offender. He vacated the original sentence, and sentenced the defendant to 30 years imprisonment at hard labor without benefit of probation or suspension of sentence. On appeal defense counsel assigned as error the trial judge's denial of the motion to suppress the evidence, the imposition of an excessive sentence, and error patent.[1] Clifton Ayche filed a supplemental pro se brief raising issues regarding the habitual offender proceeding. For the reasons that follow, we affirm the conviction and sentence. We remand with instructions.
FACTS
The defendant filed motions to suppress evidence and statements. At the pretrial suppression hearing, the state presented one witnessDetective Eric Dufrene. He testified as follows. He is a Jefferson Parish Detective in the narcotics division. On September 1, 2004, he and Detective Klien[2] were patrolling a high crime, high drug area for which the department had received numerous citizen complaints regarding the illegal use of narcotics. The detectives were in plain clothes. They wore jackets, which identified them as police. They were in an unmarked Crown Victoria police unit with tinted windows. He and Detective Klien spotted the defendant and another male standing in what he was almost positive was the 1000 block of Carmadelle Street. The two men appeared to be clearly exchanging an object in a hand-to hand transaction. It was "pretty dark" at the time. There were other officers in the area who were also in unmarked vehicles.
Detective Dufrene stated that he decided to approach the two men because of the high-crime character of the area and the fact that the officers had frequently observed these hand-to hand-transactions. The officers pulled up their unit a few feet from the two subjects. The detectives exited the unit, walked toward the subjects and identified themselves as police officers. Then, the subjects immediately ran. He ran after the defendant while Detective Klien chased the other subject in the opposite direction. He believed the defendant ran up Carmadelle Street to Cholly when *1147 he discarded a clear plastic bag of crack cocaine approximately 10 seconds after the chase began. The defendant was probably 10-to-12 feet from Detective Dufrene when the defendant dropped the object. Detective Dufrene immediately picked up the bag as he ran behind the defendant and continued his foot chase. He retrieved a clear plastic bag with numerous rock-like objects, which were consistent with crack cocaine. He radioed other officers for assistance. He believed the other officers arrived at the intersection of Cholly and Garden Road or Cholly or Carmadelle. They continued south into the front yard of a residence. According to Detective Dufrene, at one point when Mr. Ayche turned between two houses, he threw two clear plastic bags, which were obviously "weighted with something" because one stayed on the roof while the other one rolled down. Detective Dufrene believed that Detective Matthews stopped to retrieve two clear plastic bags. Detective Dufrene saw that these bags contained off-white rock-like objects consistent with crack cocaine. These items later tested positive for cocaine. Meanwhile, Detectives Dufrene, Chase, and Delsa continued their foot pursuit through the yard. Detective Dufrene lost sight of the defendant when the detective doubled back around the block to cut him off. Detectives Chase and Delsa, however, maintained visual contact of the defendant. The defendant was captured approximately one to two minutes after the initial stop. After Detective Dufrene advised the defendant of his rights, he told Detective Dufrene the drugs were not his and he ran because he had parole or probation charges.
The trial judge found that Detective Dufrene was a credible witness. He denied the motion to suppress.
At trial, the state presented the testimony of Detectives Darryl Delsa, Curtis Matthews, and Shane Kline in addition to Detective Dufrene. Detective Dufrene identified State's Exhibit 1-A as the object he retrieved. Detective Matthews identified the objects that he retrieved as State's Exhibit 1-B. Andrea Travis, a forensic science expert, testified that both specimens in State's Exhibit 1 tested positive for cocaine. The total weight was seven grams. Lieutenant Bruce Harrison, an expert in the field of use, packaging, distribution and evaluation of narcotics, testified that the narcotics evidence in this matter was more consistent with possession with intent to distribute than possession for personal use.
ASSIGNMENT OF ERROR NUMBER ONE
It was error to deny the motion to suppress.
DISCUSSION
The defendant argues that at the time the officers approached him, there was no reasonable suspicion or probable cause to stop him. The state disagrees.
At trial, the state presented pertinent evidence on the suppression issue through the testimony of Detectives Delsa, Matthews, and Kline in addition to Detective Dufrene. Detectives Dufrene and Kline, however, were the only detectives involved in the initial encounter with the defendant. Their testimony, which was corroborated by the other detectives, presents substantially the same facts and circumstances surrounding the seizure at issue as was indicated by Detective Dufrene's testimony at the hearing on the motion to suppress.[3]
*1148 Although not required to do so, an appellate court may review the testimony adduced at trial, in addition to the testimony adduced at the suppression hearing, in determining the correctness of the trial court's pretrial ruling on a motion to suppress. State v. Leger, 05-0011 (La.7/10/06), 936 So.2d 108, 122, cert. denied, Leger v. Louisiana, ___ U.S. ___, 127 S.Ct. 1279, 167 L.Ed.2d 100 (2007) (citing State v. Sherman, 04-1019 (La.10/29/04), 886 So.2d 1116; State v. Green, 94-887 (La.5/22/95), 655 So.2d 272)).
We have reviewed the pertinent evidence given at the trial of the instant case. While the evidence adduced at trial does not affect the result we reach in the instant case, we have taken into consideration Detective Kline's testimony at trial, in which he explained that he and Detective Kline observed "what we believed to be a hand to hand narcotics transaction." We have also taken into consideration Detective Dufrene's trial testimony that he has about eight years experience with the Sheriff's Office. See, e.g. State v. Beals, 410 So.2d 745, 747 (La.1982) (The court took into consideration the trial fact that the defendant was a resident of premises named in a search warrant).
In a hearing on a motion to suppress, the state bears the burden of proof in establishing the admissibility of evidence that is seized without a warrant. La. C.Cr.P. art. 703(D). The trial court's decision to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression. State v. Burns, 04-175 (La.App. 5 Cir. 6/29/04), 877 So.2d 1073, 1075.
Law enforcement officers are authorized by La.C.Cr.P. art. 215.1, as well as state and federal jurisprudence, to perform investigatory stops which permit officers to stop and interrogate a person who is reasonably suspected of criminal activity. State v. Becnel, 04-1266 (La.App. 5 Cir. 5/31/05), 904 So.2d 838, 852 (citations omitted). The Terry[4] standard, as codified in La.C.Cr.P. art. 215.1, authorizes police officers to stop a person in a public place whom they reasonably suspect is committing, has committed, or is about to commit an offense and demand that the person identify himself and explain his actions. State v. Becnel, 904 So.2d at 852 (citation omitted).
Under the Fourth Amendment, a police officer may briefly detain an individual for investigative purposes if the officer has a reasonable and articulable suspicion that the individual has committed or is about to commit a crime. State v. Boyer, 07-0476 (La.10/16/07), 967 So.2d 458, 469 (citations omitted). In determining whether the police possessed the requisite minimal level of objective justification for an investigatory stop based on reasonable suspicion of criminal activity, reviewing courts must look at the totality of the circumstances of each case, a process which allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person. State v. Boyer, 967 So.2d 469-70 *1149 (quotations omitted; citations to quoted material omitted). Police do not have to observe what they know to be criminal behavior before investigating; the requirement is that the officers have a reasonable suspicion of criminal activity. State v. Benjamin, 97-3065 (La.12/1/98), 722 So.2d 988, 989.
Factors that may support reasonable suspicion for an investigatory stop include an officer's experience, his knowledge of recent criminal patterns, and his knowledge of an area's frequent incidents of crime. State v. Burns, 877 So.2d at 1076 (citation omitted). Nervous, evasive behavior is a pertinent factor in determining reasonable suspicion. State v. Walker, 06-1045 (La.4/11/07), 953 So.2d 786, 792 (quoting Illinois v. Wardlow, 528 U.S. 119, 120 S.Ct. 673, 676, 145 L.Ed.2d 570 (2000) with approval).
In State v. Burns, supra, this court upheld the denial of a motion to suppress the evidence after finding the police had reasonable suspicion to conduct an investigatory stop when the defendant was observed standing in the middle of the street in a high-crime area. The defendant noticed the unmarked unit as police presence and started to walk away. As the defendant was walking away, he kept looking back towards the officers. The officer exited his vehicle and the defendant ran. This court determined that the defendant's unprovoked flight from the officers in a high-crime area provided the requisite reasonable suspicion to justify the investigatory stop. Compare, State v. Temple, 02-1895 (La.9/9/03), 854 So.2d 856, 861 (Court held that reasonable suspicion for a stop was more than "looking nervous" and sitting on a porch in a "high crime area.").
In the present case, testimony was presented that after the experienced detectives received narcotics complaints Clifton Ayche was observed in a high-crime, high-drug area in what appeared to be a hand-to-hand narcotics transaction. Upon the approach of the detectives, who were wearing clothing that identified themselves as officers, the defendant fled.
We hold that the experienced officers' observation of an apparent drug deal in a high drug crime area followed by the defendant's flight upon the approach of two police officers gave the police the requisite reasonable suspicion to pursue and detain him. Compare, State v. Walker, supra, 953 So.2d at 791-92 ("Officer Schnapp's observation of an apparent drug deal followed by the defendant's flight on approach of the `stacked patrol' gave the police the requisite reasonable suspicion, i.e., minimal level of objective justification, to pursue and detain their suspect.").
Additionally, we find that the discarded bags of narcotics were properly seized as abandoned property. When property is abandoned prior to any unlawful intrusion into a citizen's right to be free from governmental interference, the property may be lawfully seized. It is only when a defendant is stopped without reasonable cause or when the stop without reasonable cause is imminent that the "right to be left alone" is violated, thereby rendering the seizure of any abandoned property unlawful. State v. Young, 05-702 (La.App. 5 Cir. 2/14/06), 938 So.2d 90, 97-98 (citation omitted).
Thus, the trial judge did not err in denying the defendant's motion to suppress the evidence.
ASSIGNMENT OF ERROR NUMBER TWO
The trial court imposed an excessive sentence.
*1150 DISCUSSION
The defendant argues his 30-year sentence at hard labor is unconstitutionally excessive, claiming that the facts of the case do not warrant the virtual life sentence imposed. The state responds that the defendant's sentence was not constitutionally excessive based on the nature of the offense, the defendant's criminal background, and similar sentences that have been upheld in analogous cases.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered constitutionally excessive, even when it is within the applicable statutory range, if it is grossly disproportionate to the severity of the offense or imposes needless and purposeless pain and suffering. State v. Lagarde, 07-123 (La. App. 5 Cir. 5/29/07), 960 So.2d 1105, 1115 (citing State v. Lobato, 603 So.2d 739 (La. 1992)).
In reviewing a sentence for excessiveness, the appellate court must consider the punishment and the crime in light of the harm to society and gauge whether the penalty is so disproportionate as to shock our sense of justice, while recognizing the trial court's wide discretion. State v. Lagarde, supra (citation omitted). The trial judge is afforded wide discretion in determining a sentence, and the appellate court will not set aside a sentence for excessiveness if the record supports the sentence imposed. Id.
Trial judges are granted great discretion in imposing sentences and a sentence will not be set aside as excessive absent clear abuse of that broad discretion. State v. Bacuzzi, 97-573 (La.App. 5 Cir. 1/27/98), 708 So.2d 1065, 1068-69 (citations omitted). The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. State v. Lagarde, 960 So.2d at 1117 (citing State v. Jones, 99-2207 (La.1/29/01), 778 So.2d 1131). In reviewing a trial court's sentencing discretion, three factors are considered: 1) the nature of the crime, 2) the nature and background of the offender, and 3) the sentence imposed for similar crimes by the same court and other courts. State v. Lagarde, 960 So.2d at 1115 (citation omitted).
The defendant was convicted of possession of cocaine and found to be a fourth felony offender, with three predicate convictions of possession of cocaine. As such, the defendant faced a sentencing range of 20 years to life imprisonment without benefit of probation or suspension of sentence. La.R.S. 15:529.1(A)(1)(c)(i); LSA-R.S. 15:529.1(G). The defendant received a 30-year sentence, which is at the lower end of the sentencing range. In imposing this sentence, the trial judge specifically noted that he presided over the recent trial, was familiar with the facts, and was of the opinion that the state had strong evidence of the charge of possession with intent to distribute cocaine. The trial court noted the pattern of cocaine possession and believed that the defendant deserved a stiff sentence.
We have previously held that a similar sentence was constitutional for a similarly, although not identically, situated offender. In State v. Williams, 02-1016 (La.App. 5 Cir. 2/25/03), 841 So.2d 936, 946-47, 944-45, writ denied, 03-2205 (La.8/20/04), 882 So.2d 571, the defendant argued that three of his four felony convictions were for possession of small amounts of cocaine, which did not merit the penalty imposed. And he argued he had a history of non-violent drug offenses. This court did not find the defendant's enhanced 30-year sentence as a fourth felony offender with an underlying *1151 conviction for possession of cocaine to be excessive.[5]
We find that the trial judge did not abuse his discretion in sentencing the defendant given the defendant's criminal history.
PRO SE SUPPLEMENTAL ASSIGNMENT
The defendant filed a pro se supplemental brief arguing that documents and exhibits were not properly certified and authenticated; the state failed to prove identity regarding two of the predicates; the trial judge erred in relying on a non-conviction as a predicate; and, the trial judge erred in using a predicate conviction that had been previously enhanced under the habitual offender statute.
DISCUSSION
The state filed a habitual offender bill of information seeking to enhance the sentence on the underlying conviction of possession of cocaine. The bill alleged that the defendant was a fourth felony offender, having been previously convicted of possession of cocaine and sentenced in case numbers 92-2382, 97-2299, and 94-2794. Mr. Ayche denied the allegations. The hearing was held on April 12, 2006.
On June 1, 2005, before the hearing, defense counsel filed an objection to the bill, asserting that the guilty plea sentence in 92-2382 could not be used as a predicate because the plea was a non-conviction taken under former La.R.S. 40:983. During the hearing, on April 12, 2006, defense counsel raised this objection. The trial judge allowed the 92-2382 plea conviction to be used as a predicate.
That same date, defense counsel filed a second objection to the bill, reurging this objection and adding the following insofar as the convictions in numbers 97-2299 and 92-2382:(1) The 97-2299 sentence could not be used as a predicate because the sentence was previously enhanced on September 8, 1997 in a habitual offender proceeding. (2) The state failed to introduce properly certified copies of the minute entries of a purported probation revocation in 92-2382. During the hearing, defense counsel objected to the admission of the penitentiary pack from the Department of Corrections ("pen pack") (Exhibit 9) as evidence of probation revocation in case number 92-2382 on the basis that only the cover sheet on the attached documents was certified rather than each included document. The trial judge found that the exhibit was properly certified and authenticated. Defense counsel also objected to the admissibility of some of the exhibits on the basis they were not certified. The trial judge concluded these were properly certified. Defense counsel, however, did not object at the hearing that the use of the 97-2299 predicate conviction was incorrect because the sentence was previously enhanced.
The trial judge concluded the state met its burden and found the defendant was a fourth felony offender. He vacated the underlying sentence and imposed the enhanced 30-year sentence.
To prove habitual offender status, the state must initially prove the prior felony convictions, and that the defendant is the same person who was convicted of the prior felonies. State v. Thomas, 06-654 (La.App. 5 Cir. 1/16/07), 951 So.2d 372, 378, writ denied, State ex rel. Thomas v. State, 07-0464 (La.11/21/07), 967 So.2d *1152 1153 (citation omitted). The latter can be established by expert testimony matching the defendant's fingerprints with those from the prior proceedings. Id.
La.R.S. 15:529.1(F) provides:
F. The certificates of the warden or other chief officer of any state prison, or of the superintendent or other chief officer of any penitentiary of this state or any other state of the United States, or of any foreign country, or of any chief officer of any parish or county jail in this state or any other state of the United States, or of the clerk of court of the place of conviction in the state of Louisiana, under the seal of his office, if he has a seal, containing the name of the person imprisoned, the photograph, and the fingerprints of the person as they appear in the records of his office, a statement of the court in which a conviction was had, the date and time of sentence, length of time imprisoned, and date of discharge from prison or penitentiary, shall be prima facie evidence of the imprisonment and of the discharge of the person, either by a pardon or expiration of his sentence as the case may be under the conviction stated and set forth in the certificate.
Various methods of proof establishing identity have been recognized as sufficient to sustain the state's burden of proof, including testimony of witnesses, expert opinion as to fingerprints, and photographs contained in duly authenticated records. State v. Mays, 05-2555 (La.5/26/06), 929 So.2d 1231, 1232 (per curiam).
The state presented its fingerprint expert, Sergeant Louis Munguia, who testified that he took the defendant's fingerprints the day of the hearing and identified these fingerprints in State's Exhibit 1. Thereafter, the state introduced into evidence certified and authenticated documents to show that the defendant was the individual who had been previously convicted and sentenced in the predicate offenses. Sergeant Munguia identified all pertinent fingerprint evidence in the predicate documents as the defendant's fingerprints.
Case Number 97-2299
On appeal, Mr. Ayche complains that the state failed to meet its burden because it did not match his fingerprints taken the day of the hearing with the fingerprints on the bill of information in case number 97-2299. He also generally challenges the admissibility of the evidence on the basis it lacked certification or authentication.
Defense counsel had no objection to Exhibit 3, court records for case number 97-2299, being admitted as long as the documents were properly certified. Exhibit 3 pertinently consisted of certified copies of the bill of information, the jury verdict, the original sentence, the enhanced habitual offender sentence, and fingerprints in case number 97-2299. Each of these documents was certified by the deputy clerk as true copies of the original documents on file in that office. The court concluded the documents were suitably certified and defense counsel then stated he had no objection. Thus, this issue was not preserved for appellate review. See, State v. Girod, 96-660 (La.App. 5 Cir. 11/25/97), 703 So.2d 771, 776, writ denied, 98-0244 (La.6/19/98), 719 So.2d 480 (An appeal claim of inadmissible hearsay was not preserved).
But even assuming the issue was preserved, the argument is meritless. In this case, the certified copies under seal from the clerk of court of the place of conviction complies with La.R.S. 15:529.1(F) as prima facie evidence of the conviction and sentence. The certified copies were also admissible without extrinsic *1153 evidence of authenticity under La.C.E. arts. 902(2)(b)[6] and 904.[7]
Defense counsel objected to admission of Exhibit 4 (in connection with case number 97-2299), which consisted of certified copies of a Jefferson Parish Sheriff's arrest register. Counsel argued that Sergeant Munguia could not authenticate the records. The trial judge correctly concluded, however, that Exhibit 4 was properly certified by the custodian of records for the Sheriff's Office as a true and correct copy of the original official documents. We agree. Each document in that exhibit bears a certification from the custodian of the Sheriff's records that the documents were true and correct copies of the Sheriff's official records. See: La.R.S. 15:529.1(F); La.C.E. art. 902(2)(b); La. C.E. art. 904.
Sergeant Munguia explained that the fingerprints in Exhibit 3, which included the certified copy of the bill of information, were of poor quality and could not be used for comparison. The state then sought to link the certified documents evidencing the conviction and sentence with the certified copy of the arrest register (Exhibit 4) that contained a legible copy of fingerprints.
Sergeant Munguia testified that the defendant's fingerprints he took that day matched those contained in Exhibit 4.
The arrest register (Exhibit 4) is linked to the bill of information (Exhibit 3) by the complaint number, the defendant's name, date of birth, the offense charged, and the date of the offense. Thus, the state presented sufficient evidence to establish the defendant's identity as the person who was convicted and sentenced in case number 97-2299. See State v. Guillard, 04-899 (La.App. 5 Cir. 4/26/05), 902 So.2d 1061, 1074, writ denied, 05-1381 (La. 1/13/06), 920 So.2d 233. As such, we find the defendant's claim that the evidence was insufficient to establish his identity is without merit.
Finally, the defendant argues generally that the trial court improperly used predicates that had been already used to enhance prior sentences, thus subjecting him to "double enhancement" and an illegal sentence. He does not, however, specify which predicates constitute "double enhancement." But he does argue that the use of case number 97-2299 constitutes "double enhancement." He relies on State v. Ayche, 98-191 (La.App. 5 Cir. 7/28/98), 717 So.2d 1218, 1223-24, writ granted in part on other grounds, 98-2345 (La.1/15/99), 723 So.2d 952, where this court vacated his habitual offender finding and sentence in case number 97-2299. He contends that after further proceedings his sentence was enhanced.
Although defense counsel filed a written objection the day of the hearing to the use of case number 97-2299 as constituting "double enhancement," he did not urge the objection at the hearing. La.R.S. *1154 15:529.1(D)(1)(b) states that any challenge to a previous conviction or adjudication of delinquency which is not made before sentence is imposed may not thereafter be raised to attack the sentence. See also, State v. Girod, supra, 703 So.2d at 776-77. Since defense counsel failed to apprise the trial judge at the hearing of his claim of "double enhancement" and its basis, we find he did not preserve this issue for review on appeal. Even had the issue been preserved, it is meritless. There is no prohibition against using the same conviction multiple times in separate multiple offender proceedings to sequentially establish defendant's multiple offender status and enhance the defendant's sentence as to the new crime. See, State v. Pearson, 03-652 (La.App. 5 Cir. 12/9/03), 861 So.2d 283, 288, writ denied, 04-0166 (La.6/4/04), 876 So.2d 73 (citation omitted).
Case Number 92-2382
The defendant argues the state failed to match his fingerprints taken the day of the hearing with the bill of information in case number 92-2382.
Preliminarily, we note that the defendant also argues generally that documents and exhibits were not properly certified and authenticated. With regard to case number 92-2382, the state introduced Exhibit numbers 7, 8, and 9. Defense counsel had no objection to Exhibits 7 and 8, but he objected to Exhibit 9, the "pen pack." As to the alleged improper admission of Exhibits 7 and 8, we find that the defendant did not preserve his claim for appellate review. Even so, for the reasons that follow, we conclude that the state met its burden of proving the defendant's identity in the prior conviction and sentence by competent evidence based on linking the defendant's fingerprints taken that day with those contained in the "pen pack" Exhibit 9. The "pen pack" was properly certified and authenticated. See: La. R.S. 15:529.1(F); La.C.E. art. 902(2)(b); La.C.E. art. 904.
State's Exhibit 9, the "pen pack," included a certification by the custodian for the Louisiana Department of Public Safety and Corrections that the attached documents were true copies of the records of that department regarding Clifton Ayche, DOC No. 314753. The pack included a certified copy of the bill, the minute entry showing the plea and sentence, and a minute entry showing Clifton Ayche's probation was revoked on October 5, 1994 and that his original sentence was made executory in case number 92-2382. The document also contained fingerprints.
In essence defense counsel argued that the probation revocation must be certified by the custodian of the Plaquemines court rather than by the custodian of the Department of Corrections. In a related argument, defense counsel argued that the plea was not a conviction under R.S. 40:983. Former La.R.S. 40:983, which was repealed by 1995 La. Acts, No. 1251, § 2, provided for conditional discharge under certain circumstances. Defense counsel asserted that the plea was not a conviction under R.S. 40:983 until there was proof the probation was revoked and in this case there was no proof of revocation. The defendant reurges these objections.
We find that the trial judge did not err in accepting the documents into evidence, relying on the custodian of records' certification page. See: La.R.S. 15:529.1(F); La.C.E. art. 902(2)(b); La.C.E. art. 904. Furthermore, the custodian's certification on the cover of the "pen pack" attachments is sufficient. Each page need not be individually certified. State v. White, 28,095 (La.App. 2 Cir. 5/8/96), 674 So.2d 1018, 1029, writs denied, 96-1459 (La.11/15/96), 682 So.2d 760 and 98-0282 (La.6/26/98), 719 So.2d 1048.
*1155 Sergeant Munguia testified that he used a fingerprint card within the "pen pack" and compared it with the defendant's fingerprints taken that day and found them to be from the same person. The record further contains certified records from the district court, Exhibit 7, particularly the bill of information and the sentencing minute entry, which link with the "pen pack." Thus, the certified documents in the Department of Corrections "pen pack" were sufficiently linked to establish the defendant's identity as to the conviction, sentence, probation revocation and judgment making the sentence executory in case number 92-2382. Contrast, State v. Guilbeau, 03-1327 (La.App. 5 Cir. 2/23/04), 869 So.2d 201, 204 (This Court held that the state was not entitled to use the defendant's prior guilty plea under R.S. 40:983 to enhance his sentence after the defendant successfully completed his probation and had the charge against him dismissed).
Therefore, the defendant's assertion the state failed to meet its burden of establishing his identity as the person previously convicted and sentenced by competent evidence is meritless.
Case Number 94-2794
To the extent that the defendant generally challenges the certification and authentication of the evidence for case number 94-2794, we note the following.
In connection with the exhibits, defense counsel stated he had no objection to the introduction of Exhibits 5 and 6 if these were properly certified. The trial judge admitted the evidence.
Exhibit 5 contains records from the district court bearing the deputy clerk's seal and certification that the documents are true copies of the originals on file in that office. Exhibit 6 consists of arrest records for Clifton Ayche from the Jefferson Parish Sheriff's Office referencing the same item number contained on the bill of information in Exhibit 5. The exhibit includes fingerprints. The arrest records bear a certification on each document from the custodian of the Sheriff's records that the documents are true and correct copies of the Sheriff's official records. We conclude that the exhibits were properly certified and authenticated. See: La.R.S. 15:529.1(F); La.C.E. art. 902(2)(b); La. C.E. art. 904.
In conclusion, the issues raised in the defendant's pro se brief lack merit.
ERROR PATENT DISCUSSION
As is our practice, we have reviewed the record for errors patent, according to La. C.Cr.P. art. 920.
First, we find that the record minutes and commitments conflict with the transcript in that they do not accurately reflect the defendant's conviction and sentence. If a discrepancy exists between the minutes and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983). Because the transcript prevails, the case is remanded to the trial court in order for it to correct the minutes and commitments to conform to the transcript as follows:
1) The district court is directed to amend the April 19, 2005 jury trial minute entry to reflect that the jury returned a guilty verdict of possession of cocaine.
2) The district court is directed to amend the original May 2, 2005 commitment and the April 12, 2006 habitual offender commitment to reflect that the defendant was found guilty by a jury of possession of cocaine, a violation of La.R.S. 40:967(C).
3) The district court is directed to amend the April 12, 2006 habitual offender commitment to reflect that the defendant was convicted on May 2, 2005.

*1156 4). The district court is directed to amend the original May 2, 2005 commitment to strike the portion stating that the plea was acceptable to the State and that the defendant was advised of his rights and waived these rights.
5). The district court is directed to amend the original May 2, 2005 commitment to strike the portion that states the defendant is a "multiple quad offender."
6). The district court is directed to amend the April 12, 2006 habitual offender commitment to strike the restriction on parole eligibility and to reflect the sentence was ordered served without benefit of probation or suspension of sentence only.
The clerk of court is directed to transmit the original of the minute entry/commitment to the officer in charge of the institution to which the defendant has been committed. See, State ex rel. Roland v. State, 06-0244 (La.9/15/06), 937 So.2d 846 (per curiam).
Second, the record reflects that the trial judge properly informed Clifton Ayche of the prescriptive period for filing for post-conviction relief pursuant to La. C.Cr.P. art. 930.8 on May 2, 2005 after he imposed the original sentence. However, the trial judge did not inform the defendant of those same provisions after the defendant was found to be a habitual offender and resentenced as such. The resentencing occurred almost one year after the original sentence and advisal. Under these circumstances, we find it prudent to remand the matter and order the district court to properly inform Mr. Ayche of the time from which prescription for post-conviction relief runs by sending written notice of such to him within ten days of the rendition of the appellate opinion and to file written proof that the defendant received the notice in the record. Compare, State v. Arceneaux, 05-338 (La.App. 5 Cir. 12/27/05), 930 So.2d 44, 51.
Accordingly, it is ordered that the defendant's conviction and sentence are affirmed. We further order that this case be remanded to allow the trial court to amend the minutes and commitments as directed above. Finally, we order that the trial court send the defendant written notice of the prescriptive period for post-conviction relief applications as directed above.
CONVICTION AND SENTENCE AFFIRMED; REMANDED WITH INSTRUCTIONS.
NOTES
[1] Counsel did not brief the assignment of error patent. However, this Court routinely reviews the record for errors patent in accordance with La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La. 1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990) regardless of whether the defendant makes such a request.
[2] He is also referred to as "Cline."
[3] There were a few minor discrepancies in the testimony. Detective Dufrene explained at trial he was confused as to the names of the streets at the motion to suppress hearing when he said he first approached the defendant on Carmadelle Street instead of Garden Street. Also, at trial he testified he was approximately 10 or 15 feet behind the defendant during the chase when he observed the defendant discard an object. At the hearing, he indicated the distance was "probably" 10-to-12 feet. In addition, at the hearing, Detective Dufrene testified the incident occurred "pretty late in the afternoon" and it was "pretty dark." He explained at trial that it occurred around 9:00 at night.
[4] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
[5] Before this court addressed the merits of the excessiveness of the defendant's sentence in State v. Williams, supra, it first determined that the defendant should have been sentenced to life under the pre-amendment version of La.R.S. 15:529.1, but declined to correct the illegally lenient sentence on appeal.
[6] This provision applies to the following:

(b) Certified Louisiana public documents. A purported record, book, paper, or other document of the State of Louisiana, or of a department, board, or agency thereof or of a political subdivision of the state or a department, board, or agency of such a subdivision when certified as being the original by an officer or employee who identifies his official position and who either has custody of the document or who is otherwise authorized to make such a certification.
[7] This article provides:

When an original public document is deemed authentic without proof by extrinsic evidence as provided in Article 902(1), (2), or (3), a purported copy of the document also shall be deemed authentic when certified as true or correct by the custodian or other person authorized to make that certification, by certificate complying with Article 902(1), (2), or (3).