*39
 
 FREDERICKA HOMBERG WICKER, Judge.
 

 12This is a criminal proceeding in which the defendant/appellant Edward McMillan seeks an appeal of his conviction for possession of cocaine with intent to distribute. The defendant assigns as error the trial court’s denial of a motion to suppress. The defendant also contends that the trial court erred by allowing testimony of his previous conviction for possession of cocaine. For the reasons that follow, we affirm the defendant’s possession of cocaine conviction. We additionally vacate the defendant’s enhanced sentence and remand this matter for resentencing.
 

 PROCEDURAL HISTORY
 

 By bill of information, the state charged the defendant with one count of possession with intent to distribute cocaine, a violation of La. R.S. 40:967(A). The defendant pleaded not guilty at arraignment and filed a motion to suppress the evidence. The trial court denied a motion to suppress after a hearing.
 

 IsAfter a two-day jury trial, the defendant was found guilty as charged. The trial court sentenced the defendant to a term of imprisonment of fifteen years at hard labor. The trial court thereafter denied the defendant’s motion for new trial after a contradictory hearing. The state subsequently filed a multiple bill of information alleging that the defendant was a second felony offender. The state thereafter amended the multiple offender bill of information to allege that the defendant was a second felony offender. The defendant then stipulated that he had previously been convicted of the predicate felony as stated in the multiple bill and pleaded guilty to the multiple bill. The trial court thereafter imposed an enhanced sentence of 20 years at hard labor without benefit of probation or suspension of sentence. This timely appeal followed.
 

 FACTS
 

 The following facts were developed from the hearing on the defendant’s motion to suppress and at trial. On April 11, 2007, Detective Elvan Módica of the Jefferson Parish Sheriffs Office and several other police officers were on patrol in the Bunche Village area of Jefferson Parish. According to Detective Módica, Bunche Village is a high crime area known for drug activity. At approximately 1:15 AM, Detective Módica was driving an unmarked black Ford Explorer with his partner, Sergeant Todd Vignes. Detective Módica and Sergeant Vignes were patrolling on North Elm Street. Detective Mó-dica observed the defendant engage in a hand-to-hand transfer with a woman later identified as Elaine Lewis (“Lewis”). At the hearing on the motion to suppress, Módica explained that he saw Lewis reach her hand into the defendant’s hand and take an object out of his hand. Lewis then looked at the object for a second, put the object in her pocket, and walked away. Detective Módica believed that the defendant and Lewis had just engaged in a drug transaction. However, Detective Módica did not witness |4any money changing hands. In addition, Vignes did not observe the transaction.
 

 The man and the woman began to walk towards Detective Modica’s vehicle. Detective Módica radioed for backup. Detective Sean Cursain responded to the call. As Detective Cursain approached Detective Modica’s vehicle, he saw the defendant and Lewis walking towards the street where Detective Módica was parked. Detective Cursain was also driving an unmarked vehicle, but he had a flashing blue light in the dashboard of his vehicle. As soon as Detective Cursain made eye contact with the defendant, the defendant ran toward the apartment complex behind him. Lewis did not attempt to flee. She was
 
 *40
 
 detained and handcuffed to a chain link fence by Sergeant Curtis Matthews, Detective Cursain’s partner.
 

 Detectives Módica and Cursain, along with Sergeant Vignes thei'eafter began to pursue the defendant. Detective Módica and Sergeant Vignes saw the defendant open a door to an apartment in the apartment complex. As the defendant opened the door, Detective Módica and Sergeant Vignes saw the defendant drop an object on the ground. The defendant then ran inside the apartment and locked the door. When Detective Módica reached the door, he was able to retrieve the object that the defendant dropped. The object was an off-white rock wrapped in plastic. Charles Kron, an expert in the field of drug identification and analysis, testified at trial that the rock dropped by the defendant tested positive for cocaine.
 

 Detective Módica kicked the door of the apartment open and ran into the apartment alongside Sergeant Vignes. Sergeant Vignes examined the kitchen and a front bedroom. Detective Módica encountered the defendant in a rear bedroom. Detective Módica testified at trial that one of the windows in the bedroom was open. Detective Módica attempted to detain the defendant, but the defendant pushed him and the two men became engaged in a struggle. During the course of |ñthe struggle, Módica noticed that the defendant’s right hand was clinched and that plastic was protruding from the defendant’s hand. The defendant managed to break free from Modica’s grasp and throw a bag out of the window. At that time, Sergeant Vignes arrived and helped Detective Módi-ca handcuff and overpower the defendant.
 

 After Detective Módica and Sergeant Vignes had secured the defendant, Detective Módica walked outside to retrieve the bag that the defendant had dropped out the window. Sergeant Vignes remained in the apartment and located the bag with his flashlight. Detective Módica was eventually able to retrieve the bag with Sergeant Vignes’s assistance. The bag contained 26 individually wrapped off-white rocks weighing approximately seven and a half grams. At trial, Charles Kron testified that the rocks tested positive for cocaine.
 

 Detective Cursain asked Shamika Jolla (“Jolla”) for consent to search the apartment. Jolla was the lessee of the apartment and the mother of the defendant’s children. Jolla gave her consent and executed a Consent Search Form. While searching of the apartment, officers discovered one off-white rock on the floor of the bedroom where the defendant was apprehended. The rock later tested positive for cocaine.
 

 FIRST ASSIGNMENT OF ERROR
 

 The defendant contends that Detective Módica and Sergeant Vignes did not have reasonable suspicion sufficient to detain him. The defendant further contends that his actions were consistent with innocent, non-criminal behavior and were insufficient to provide the officer with the requisite reasonable suspicion for an investigatory stop. We disagree.
 

 The Fourth Amendment to the United States Constitution and La. Const. Art. 1, § 5 protect individuals from unreasonable searches and seizures.
 
 State v. Belton,
 
 441 So.2d 1195, 1198 (La.1983),
 
 cert. denied,
 
 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). If evidence was derived from an unreasonable search or seizure, the proper remedy is exclusion of the evidence from trial.
 
 State v. Benjamin,
 
 97-3065 (La.12/1/98), 722 So.2d 988 (citing
 
 Weeks v. United States,
 
 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914)).
 

 As a general rule, searches and seizures must be conducted pursuant to a validly executed search warrant or arrest
 
 *41
 
 warrant. Warrantless searches and seizures are considered to be per se unreasonable unless they can be justified by one of the Fourth Amendment’s warrant exceptions.
 
 See, e.g., State v. Freeman,
 
 97-1115 (La.App. 5 Cir. 12/29/98), 727 So.2d 630, 634. The state has the burden of showing that one of the exceptions applies.
 
 See, e.g., State v. McHugh,
 
 92-1852 (La.1/6/94), 630 So.2d 1259, 1262.
 

 However, the right of law enforcement officers to stop and question a person where there is “reasonable suspicion” to believe that the person is committing, has committed, or is about to commit a crime was established in
 
 Terry v. Ohio,
 
 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
 
 See also State v. Keller,
 
 403 So.2d 693, 696 (La.1981);
 
 State v. Duran,
 
 96-602 (La.App. 5 Cir. 3/25/97), 693 So.2d 2, 3,
 
 application dismissed,
 
 97-1485 (La.1/9/98), 705 So.2d 1087.
 

 La. C. Cr. P. art. 215.1 codified the United States Supreme Court’s requirements for a valid
 
 Terry
 
 stop and for any search incident to the stop. La. C. Cr. P. art. 215.1 provides in pertinent part:
 

 A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
 

 Terry
 
 stops require reasonable suspicion of criminal activity. The test for “reasonable suspicion” is whether the police officer had sufficient knowledge of |7the facts and circumstances to justify an infringement upon the individual’s right to be free from governmental interference.
 
 See, e.g., State v. Melancon,
 
 03-514 (La.App. 5 Cir. 10/28/03), 860 So.2d 225, 228,
 
 writ denied,
 
 03-3505 (La.4/23/04), 870 So.2d 297. “Reasonable suspicion” is something less than probable cause.
 
 See, e.g., State v. Sanders,
 
 97-892 (La.App. 5 Cir. 3/25/98), 717 So.2d 234,
 
 writ denied,
 
 98-1163 (La.9/25/98), 724 So.2d 774.
 

 Factors that may support reasonable suspicion for an investigatory stop include an officer’s experience, his knowledge of recent criminal patterns, and his knowledge of an area’s frequent incidents of crime.
 
 State v. Burns,
 
 04-175 (La.App. 5 Cir. 6/29/04), 877 So.2d 1073, 1076. The facts upon which an officer bases an investigatory stop should be evaluated in light of the circumstances surrounding the incident. A reviewing court must take into consideration the totality of the circumstances and give deference to the inferences and deductions of a trained police officer that might elude an untrained person.
 
 State v. Huntley,
 
 97-0965 (La.3/13/98), 708 So.2d 1048. If the police officer did not have reasonable suspicion to conduct the investigatory stop, the stop is illegal and the evidence seized from it must be suppressed.
 
 Brown v. Illinois,
 
 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). In a hearing on a motion to suppress, the State bears the burden of proof in establishing the admissibility of evidence seized without a warrant. La. C. Cr. P. art. 703(D). The trial court’s decision to deny a Motion to Suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression.
 
 State v. Bergman,
 
 04-435, (La.App. 5 Cir. 10/12/04), 887 So.2d 127.
 

 The issue in this case is whether Detective Módica and Sergeant Vignes had sufficient reasonable suspicion to stop the defendant. In several cases factually similar to the instant case, this Court has determined that police officers did have | ^sufficient reasonable suspicion. For example, in
 
 State v. Ayche,
 
 07-753 (La.App. 5 Cir. 3/11/08), 978 So.2d 1143, the defen
 
 *42
 
 dant was charged with one count of possession with intent to distribute cocaine. He assigned as error the trial judge’s denial of the motion to suppress the evidence. Two police officers observed the defendant and another man exchange an object in a hand-to-hand transaction.
 
 Id.
 
 at 1146. The transaction took place in a high crime area. The officers pulled up their unit a few feet from the two men, then exited the unit, walked toward the subjects, and identified themselves as police officers.
 
 Id.
 
 The two men immediately ran. The defendant discarded a clear plastic bag while running from the officers.
 
 Id.
 
 at 1146-47. One of the officers stopped to pick up the bag. The bag contained numerous rock-like objects, which later tested positive for crack cocaine.
 
 Id.
 
 at 1147. The trial court denied the motion to suppress. This Court affirmed, reasoning that “the experienced officers’ observation of an apparent drug deal in a high drug crime area followed by the defendant’s flight upon the approach of two police officers gave the police the requisite reasonable suspicion to pursue and detain him.”
 
 Id.
 
 at 1149.
 
 See also State v. Temple,
 
 02-1895 (La.9/9/03), 854 So.2d 856, 861 (holding that reasonable suspicion for a stop was more than “looking nervous” and sitting on a porch in a “high crime area.”);
 
 State v. Fearheiley,
 
 08-0307 (La.4/18/08), 979 So.2d 487, 489 (holding that a police officer’s observation of a apparent brief hand-to-hand transaction inside a vehicle gave rise to reasonable suspicion for an investigatory stop because the officer was not “required to turn a blind eye to the circumstances and ignore what two years of experience in narcotics investigations ... had taught him, that in the narcotics trade ‘when it’s done outside, it’s done very fast and from one hand to the next.’ ”).
 

 The defendant contends that his position is supported by
 
 State v. Gagnon,
 
 01-1302 (La.App. 5 Cir. 4/10/02), 817 So.2d 167. The defendant is correct in his |3assertion that in
 
 Gagnon,
 
 this Court determined that a police officer did not have the requisite reasonable suspicion to justify an investigatory stop. However,
 
 Gagnon
 
 is distinguishable from the instant case. In
 
 Gagnon,
 
 a police officer stopped the defendant solely to obtain his identity and to investigate a tip that a black male was selling narcotics at an apartment. The officer had not witnessed a hand-to-hand transaction.
 
 Id.
 
 at 170. We held that the officer did not have sufficient reasonable suspicion to detain the defendant because the officer was unsure of any criminal activity the defendant was committing and no evidence was presented that the area or the apartment complex was a known drug or high crime area.
 
 Id.
 
 at 171.
 

 In the present case, testimony was presented that an experienced police officer observed the defendant in a high-crime, high-drug area in what appeared to be a hand-to-hand narcotics transaction. When the defendant observed police officers approach, he fled. We find that the officer’s observation of an apparent drug deal in a high drug crime area followed by the defendant’s flight upon the approach of police officers gave the police the requisite reasonable suspicion to pursue and detain him. The trial court was not manifestly erroneous in denying the defendant’s motion to suppress.
 

 Accordingly, this assignment of error has no merit.
 

 SECOND ASSIGNMENT OF ERROR
 

 The defendant contends that the trial court erred in allowing the state to present evidence of his previous convictions based on the testimony of Elaine Lewis. Lewis testified at trial that she had known the defendant her entire life. Defense counsel asked Lewis if the defendant had ever offered to sell her cocaine.
 
 *43
 
 She responded, “I never ... I never known [the defendant] to sell crack cocaine.” Before defense counsel tendered the witness for cross-examination, counsel 110requested a bench conference. At the conference, counsel argued that the state should not be allowed to question Lewis about the defendant’s previous convictions. The trial court disagreed and allowed the prosecutor to ask Lewis about the defendant’s 1998 conviction for possession with intent to distribute cocaine.
 

 A witness may be cross-examined on any matter relevant to any issue in the case. La. C.E. art. 611. However, La. C.E. art. 401 generally excludes the admission on cross examination of evidence of the defendant’s character or a trait of his character for the purpose of proving he acted in conformity therewith on the occasion in question. However, La. C.E. art. 404(A)(1) allows admission on cross-examination of evidence of a pertinent trait of a defendant’s character offered by the prosecution to rebut evidence of the defendant’s good character admitted by the defense during its case-in-chief. Under La. C.E. art. 405(A), a character witness may be cross-examined regarding relevant specific instances of conduct. A trial judge’s determination regarding the relevancy and admissibility of evidence will not be overturned on appeal absent a clear abuse of discretion.
 
 State v. Sandoval,
 
 02-230 (La.App. 5 Cir. 2/25/03), 841 So.2d 977, 985,
 
 writ denied,
 
 03-853 (La.10/3/03), 855 So.2d 308
 

 In
 
 State v. Mosley,
 
 08-1318 (La.App. 5 Cir. 5/12/09), 13 So.3d 705, this Court held that the trial court did not err in allowing the state to introduce records of the defendant’s prior narcotics convictions during its cross-examination of a defense witness. On direct examination, the witness testified she had known the defendant for one and one-half years and that she had never known the defendant to sell narcotics.
 
 Id.
 
 at 715. Before beginning his cross-examination, the prosecutor requested a bench conference. The prosecutor told the judge that he believed defense counsel had opened the door to questions regarding the ^defendant's prior drug convictions.
 
 Id.
 
 The trial court agreed and allowed the state to question the defense witness about the defendant’s prior drug convictions and introduce into evidence certified copies of the defendant’s two prior convictions.
 
 Id.
 
 at 715-16. This Court concluded that questions regarding the defendant’s past drug convictions were proper because the defense counsel opened the door to such rebuttal questioning when he asked the defense witness whether she knew the defendant to be a drug dealer.
 
 Id.
 
 at 716.
 

 Similarly, in
 
 State v. Hurst,
 
 01-1817 (La.App. 4 Cir. 9/25/02), 828 So.2d 1165,
 
 writ denied,
 
 03-0709 (La.3/19/04), 869 So.2d 840, the defendant was convicted of second degree murder. The defendant’s mother was called by the defense as a character witness at trial.
 
 Id.
 
 at 1168. The defense counsel questioned the mother as to whether she had ever known her son to be violent or to carry a gun.
 
 Id.
 
 at 1170. She responded that the defendant was not violent, and that she had not seen a gun.
 
 Id.
 
 On cross-examination, the prosecutor asked her about the defendant’s prior arrests for armed robbery, possession of cocaine and possession of marijuana, and his conviction for theft of goods valued at under $100.00.
 
 Hurst,
 
 828 So.2d at 1170. On appeal, the Fourth Circuit concluded that “[t]he defense opened the door to evidence concerning the defendant’s character.”
 
 Id.
 

 In this case, Lewis unambiguously testified that she had known the defendant since he was born and that she had never known him to sell cocaine. She therefore opened the door to questions regarding the
 
 *44
 
 defendant’s previous conviction for possession with intent to distribute cocaine. The trial court was not manifestly erroneous in overruling defense counsel’s objection to the testimony.
 

 Finally, we note that the defendant additionally contends in this assignment of error that the state did not properly authenticate the documentation of his previous conviction. However, the defendant stipulated to the previous conviction |12and defense counsel failed to make a contemporaneous objection pursuant to La. C. Cr. P. art. 841. An irregularity or error cannot be availed of after a verdict unless it was objected to at the time of the occurrence.
 
 State v. Noil,
 
 01-521 (La.App. 5 Cir. 12/26/01), 807 So.2d 295,
 
 writ denied,
 
 02-0276 (La.10/25/02), 827 So.2d 1177.
 

 Accordingly, this assignment of error has no merit.
 

 ERRORS PATENT
 

 The record was reviewed for errors patent pursuant to La. C. Cr. P. art. 920(2).
 
 See also State v. Oliveaux,
 
 312 So.2d 337 (La.1975);
 
 State v. Weiland,
 
 556 So.2d 175 (La.App. 5 Cir.1990). We discern two errors patent.
 

 First, the trial court failed to vacate the defendant’s original fifteen year sentence prior to sentencing the defendant to a term of twenty years as a multiple offender. Where the original sentence on the underlying offense has not been vacated at the time of defendant’s sentencing as a multiple offender, the original sentence remains in effect and the subsequent sentence as a multiple offender is null and void.
 
 State v. Thomas,
 
 98-1298 (La.App. 5 Cir.4/27/99), 734 So.2d 140, 144. We therefore remand this matter to the trial court for resentencing, with instructions to vacate defendant’s original sentence before imposing the multiple offender sentence.
 
 State v. Stokes,
 
 99-1287 (La.App. 5 Cir.4/13/00), 759 So.2d 980, 988.
 

 We acknowledge that in
 
 State v. Davis,
 
 01-123 (La.App. 5 Cir. 7/30/01), 792 So.2d 126, this Court followed the dictates of
 
 State v. Mayer,
 
 1999-3124 (La.3/31/00), 760 So.2d 309. In
 
 Mayer,
 
 the Louisiana Supreme Court found that vacation of the habitual offender sentence was not necessary where the transcript failed to reflect the trial court vacated the previously imposed sentence before imposing the habitual offender sentence. The court reasoned that the substantial | ^rights of the defendant were protected since the commitment/minute entry “reflect [ed] that the trial judge vacated the defendant’s original sentence and thereby eliminated any possible confusion as to the terms of the defendant’s confinement ...”
 
 Mayer,
 
 760 So.2d at 310.
 

 In
 
 Davis,
 
 this court found that the multiple offender sentence was valid despite the fact that the transcript failed to indicate that the trial judge had vacated the original sentence. However, both
 
 Davis
 
 and
 
 Mayer
 
 are distinguishable from the instant case. In those cases, the commitment and minute entry reflected that the trial court vacated defendant’s original sentence whereas the transcript did not so reflect. In the present case, neither the transcript nor the commitment and minute entry indicates that the trial court vacated defendant’s original sentence prior to imposing an enhanced sentence. Under these circumstances, we find that it is necessary to vacate defendant’s multiple offender sentence as null and void and to remand the matter for resentencing.
 

 Second, the court imposed the habitual offender sentence without benefit of probation or suspension of sentence, as required by La. R.S. 15:529.1(G), but failed to require that the first two years be
 
 *45
 
 served without benefit of parole, as required by La. R.S. 40:967 B(4)(b). This error requires no corrective action. La. R.S. 15:301.1 makes the restriction self-activating.
 

 CONCLUSION AND DECREE
 

 For the foregoing reasons, the defendant’s conviction is affirmed. This matter is remanded to the trial court. The trial court is instructed to vacate the defendant’s original fifteen year sentence prior to sentencing the defendant as a multiple offender.
 

 |,4AFFIRMED; REMANDED WITH INSTRUCTIONS.