FREDERICKA HOMBERG WICKER, Judge.
 

 | gin this criminal matter, bearing docket number 08-KA-1318, defendant/appellant Terrance L. Mosley appeals his jury trial conviction of possession with intent to distribute marijuana, a violation of La.R.S. 40:966(A). In a separate appeal — a companion case on this Court’s docket — bearing docket number 08-KA-1319 he appeals his habitual offender life sentence.
 

 Mr. Mosley assigns the following errors in the present appeal 08-KA-1318: (1) The trial court erred by accepting Lieutenant Lloyd as an expert and allowing him to give an opinion on the ultimate issue. (2) It was error for the state to introduce “other crimes” evidence through the testimony of Ms. Morgan. (3) The evidence was insufficient to support this conviction. For the reasons that follow, we affirm.
 

 Procedural History
 

 |3The state filed a bill of information charging Mr. Mosley and the codefendant Theodore J. Jones with possession with intent to distribute marijuana. A jury trial proceeded as to Mr. Mosley alone. At trial, the state introduced evidence that Mr. Jones pleaded guilty to possession with intent to distribute marijuana. The twelve-person jury rendered a verdict of guilty as charged as to Mr. Mosley. Mr. Mosley filed a motion for new trial which the trial judge denied. Thereafter the trial court sentenced Mr. Mosley to 25 years at hard lábor.
 
 [1]
 
 On the same day, the state filed a habitual offender bill of information, alleging that Mr. Mosley was a third felony offender. The habitual offender finding
 
 *708
 
 and sentencing are the subject of the separate appeal. A review of that appellate record indicates that on August 22, 2008, the trial judge held a habitual offender hearing and found Mr. Mosley to be a triple felony offender.
 
 [2]
 
 It also indicates that on August 25, 2008, the trial judge vacated the previous 25-year sentence and sentenced Mr. Mosley to imprisonment for the remainder of his natural life without benefit of parole, probation, or suspension of sentence.
 
 [3]
 

 This timely appeal followed the conviction and original 25-year sentence.
 

 Facts
 

 Lieutenant Russell Lloyd of the Gretna Police Department testified that he has been the commander of the Criminal Investigations Division for more than 19 years. He has been involved with narcotics investigations for 13 years. On February 14, 2008, Lieutenant Lloyd was assigned to a multi-jurisdictional crime task force which included the Gretna and New Orleans police departments as well|4as the Jefferson and Plaquemines Parish sheriffs offices. Its purpose was to combat crime on the Westbank. On that evening he patrolled the David Development/Avondale area. He and other officers were riding in an unmarked vehicle, and they wore plain clothes with police shirts instead of uniforms.
 

 Lieutenant Lloyd testified that at the intersection of Alma and Wayne Streets, he passed behind a red Camaro occupied by two men. Mr. Mosley was sitting in the passenger seat. Mr. Jones was the driver. The car drew his attention because it had two license plates: a temporary tag and a “hard” plate. The car was also parked on the street, facing against traffic. The officer testified that duplicate license plates and parking on the wrong side of the street are traffic violations.
 

 Lieutenant Lloyd stated that he pulled his vehicle in front of the car to prevent the occupants from moving it. When the lieutenant exited his vehicle, he saw Mr. Mosley reach toward the floorboard in front of him as if he were trying to hide something. The officers had both occupants get out of the car. Lieutenant Lloyd then inspected the floorboard in front of the seat where Mr. Mosley had been sitting. Lieutenant Lloyd stated that he saw a gallon-size plastic zip-lock bag that contained green vegetable matter, and he removed the bag. He stated that there was nothing else on the passenger floorboard of the vehicle. Lieutenant Lloyd arrested Mr. Mosley and Mr. Jones.
 

 Lieutenant Lloyd testified that following the arrests, he searched the Camaro. In the back seat, he found an open Adidas brand gym bag containing a second gallon bag filled with green vegetable matter. The bag was directly behind Mr. Mosley on the passenger side within arm’s reach. Lieutenant Lloyd stated that he searched Mr. Mosley’s person and recovered $400.00. He found $513.00 on Mr. Jones’ person.
 

 |sAt trial, the parties stipulated to the chemist’s report. The report shows that the two plastic bags of green vegetative matter tested positive for marijuana. One bag of marijuana had a net weight of approximately 430.40 grams, and the other bag had a net weight of approximately 436.90 grams. Thus, the sum of those
 
 *709
 
 weights was 867.3 grams. The parties further stipulated that if the chemist were called to testify she would testify in accordance with her report. The jury had the opportunity to view the two bags that the officer seized and which were introduced into evidence.
 

 Defense witness Yolanda Morgan testified that Mr. Mosley is her daughter’s boyfriend, and that he was arrested beside her Alma Street residence in Westwego, Louisiana after visiting there. She stated that she has known Mr. Mosley for one and one-half years, and during that time she has not known him to sell narcotics. She said she had smelled marijuana on him on occasion. When she asked him about it, he told her that that was all he did. Ms. Morgan stated that at the time of the arrest, one of the police officers asked her if she knew Mr. Mosley. She replied that she did, but that she did not know the man arrested with him. Ms. Morgan told the officers that Mr. Mosley had just left her house, and that he did not have anything in his hands at that time.
 

 Law and Discussion
 

 Sufficiency
 

 Mr. Mosley raises trial errors in addition to arguing that the evidence at trial was insufficient. In particular, he argues that Lieutenant Lloyd’s opinion testimony regarding the issue of Mr. Mosley’s intent to distribute should be disregarded. However, when the issues on appeal relate to both the sufficiency of evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence by considering the entirety of the evidence.
 
 State v.
 
 |6
 
 Hearold,
 
 603 So.2d 731, 734 (La.1992). Therefore, Lieutenant Lloyd’s testimony is considered in our discussion of the sufficiency of the evidence. The assigned error regarding his expertise is discussed separately.
 

 The constitutional standard for testing the sufficiency of the evidence, as enunciated in
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier-of-fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt.
 
 State v. Cummings,
 
 95-1377, p. 2 (La.2/28/96), 668 So.2d 1132, 1133. Additionally, where circumstantial evidence forms the basis of the conviction, the evidence must exclude every reasonable hypothesis of innocence, “assuming every fact to be proved that the evidence tends to prove.”
 
 State v. Draughn,
 
 05-1825, p. 7 (La.1/17/07), 950 So.2d 583, 592,
 
 cert. denied, Draughn v. Louisiana,
 
 — U.S.-, 128 S.Ct. 537, 169 L.Ed.2d 377 (2007)
 
 citing
 
 La.R.S. 15:438 and
 
 State v. Neal,
 
 00-0674, p. 9 (La.6/29/01), 796 So.2d 649, 657,
 
 cert. denied,
 
 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002) (quotations in original). This statutory test works with the Jackson constitutional sufficiency test to evaluate whether all evidence, direct and circumstantial, is sufficient to prove guilt beyond a reasonable doubt to a rational jury.
 
 Neal, supra,
 
 00-0674 at 9, 796 So.2d at 657,
 
 citing State v. Rosiere,
 
 488 So.2d 965, 968 (La.1986).
 

 Circumstantial evidence involves, in addition to the assertion of witnesses as to what they have observed, a process of reasoning, or inference by which a conclusion is drawn.
 
 State v. Chism,
 
 436 So.2d 464, 469 (La.1983). The trier of fact must decide what reasonable inferences may be drawn from the circumstantial evidence, the manner in which competing inferences should be resolved, 17reconciled or compromised; and the weight and effect to be given to each permissible inference.
 
 Id.
 

 
 *710
 
 Constitutional law does not require the reviewing court to determine whether it believes the witnesses or whether it believes that the evidence establishes guilt beyond a reasonable doubt.
 
 State v. Spears,
 
 05-0964, p. 3 (La.4/4/06), 929 So.2d 1219, 1222
 
 citing State v. Mussall,
 
 523 So.2d 1305, 1309 (La.1988). Rather, the fact finder is given much discretion in determinations of credibility and evidence, and the reviewing court will only impinge on this discretion to the extent necessary to guarantee the fundamental protection of due process of law.
 
 Spears, supra,
 
 05-0964 at 3, 929 So.2d at 1222-23 (Citations omitted).
 

 The crime of possession with intent to distribute marijuana requires proof that the defendant knowingly and intentionally possessed the drug and that he did so with the specific intent to distribute it. La.R.S. 40:966(A);
 
 State v. Brown,
 
 04-1194, p. 7 (La.App. 5 Cir. 4/26/05), 902 So.2d 542, 547,
 
 writ denied,
 
 05-1637 (La.2/3/06), 922 So.2d 1173.
 

 At trial, the state introduced evidence of Mr. Mosley’s 1996 conviction for possession with intent to distribute cocaine, and his 1997 conviction for cocaine distribution. Lieutenant Lloyd, whom the trial court accepted as an expert in the field of narcotics-related investigations, testified that he “charged” Mr. Mosley and Mr. Jones with possession of marijuana with intent to distribute at the time of their arrest based on the large quantity of money and marijuana the men had in their possession, and because there was no paraphernalia in the car that indicated personal consumption. The officer said he did not find any joints, “roaches” (the remains of previously smoked marijuana cigarettes), or cigarette rolling papers in the car to indicate that the two men had used marijuana.
 

 |8 According to Lieutenant Lloyd, the marijuana weighed the equivalent of two pounds. On cross-examination, Lieutenant Lloyd stated that the quantity in and of itself does not make a distribution case. He admitted that he saw no transaction involving narcotics. He testified that he saw Mr. Mosley sitting in the car where there was approximately one pound of marijuana or 400 grams. He stated that marijuana is not perishable. While it might dry out over time, it can still be smoked. He agreed that some indications of a distributor are that a person would have a scale, packaging materials and other bags to transfer the greater amount into smaller amounts.
 

 Mr. Mosley argues that, at most, the state proved he was attempting to purchase marijuana from Mr. Jones. Mr. Mosley asserts that the state failed to exclude the reasonable inference that he went to the ear to purchase one of the bags of marijuana for his personal use based on the following evidence: (1) Marijuana is not a perishable item. (2) Quantity alone does not establish distribution. (3) There were no observable drug transactions. (4) There were no items associated with drug transactions. (5) Mr. Mosley’s conviction for distribution was 10 years ago. (6) The marijuana was not packaged for individual sales.
 

 Specific intent is defined as that state of mind which exists when the circumstances indicate the offender actively desired the prescribed criminal consequences as reasonably certain to result from his act or failure to act. La.R.S. 14:10. The intent to distribute may be established by proving circumstances surrounding the defendant’s possession which give rise to reasonable inferences of intent to distribute.
 
 State v. Carey,
 
 07-674, p. 4 (La.App. 5 Cir. 12/27/07), 975 So.2d 27, 29,
 
 *711
 

 writ denied,
 
 08-0430 (La.11/10/08), 996 So.2d 1064.
 

 In the absence of circumstances from which an intent to distribute may be inferred, mere possession of a drug does not amount to evidence of intent to 1 fldistribute, unless the quantity is so large that no other inference is possible.
 
 State v. Hearold,
 
 603 So.2d at 735-36. The following factors are useful in determining whether circumstantial evidence is sufficient to prove the intent to distribute a controlled dangerous substance: 1) previous attempts to distribute the drug; 2) whether the drug was in a form consistent with distribution to others; 3) the amount of the drug; 4) expert or other testimony showing the amount found in the defendant’s possession to be inconsistent with personal use only; and 5) paraphernalia evidencing an intent to distribute.
 
 Hearold, supra,
 
 603 So.2d at 735;
 
 State v. House,
 
 325 So.2d 222, 225 (La.1975). We agree with the Fourth Circuit that by describing the factors as “useful,” the Supreme Court did not require that the evidence fall squarely within the listed factors to be sufficient for the jury to find the requisite intent to distribute.
 
 State v. Cushenberry,
 
 94-1206, p. 4 (La.App. 4 Cir. 1/31/95), 650 So.2d 783, 786.
 

 Furthermore, in discussing the first element of the five-factor formula, the
 
 House
 
 and
 
 Hearold
 
 courts specifically refer to evidence of the defendant’s prior attempts to distribute the drug involved in the current offense. But the
 
 Hearold
 
 court suggests that evidence of distribution of any illegal drug would be sufficient to support an inference of intent to distribute. Addressing the testimony about the defendant’s prior drug activity, the court stated: “This evidence of
 
 prior drug distribution,
 
 if admissible and when considered with the other evidence pertaining to the amount of drugs found in the bag, could provide a basis for a rational trier of fact to conclude beyond a reasonable doubt that defendant intended to distribute the methamphetamine in his possession in accordance with his longstanding drug dealing operation.”
 
 Hearold, supra,
 
 603 So.2d at 736 (Emphasis added).
 

 Large sums of cash may also be considered as circumstantial evidence of intent to distribute a controlled substance.
 
 State ex rel. B.L.,
 
 02-923, p. 4 (La.App, |10 5 Cir. 1/28/03), 839 So.2d 246, 248
 
 citing Hearold, supra,
 
 603 So.2d at 736 and
 
 State v. Taylor,
 
 99-1154, p. 15 (La.App. 5 Cir.2/29/00), 757 So.2d 63, 72,
 
 writ denied,
 
 00-1021 (La.3/30/01), 788 So.2d 441.
 

 Mr. Mosley’s convictions show that he had a history of narcotics distribution, but not marijuana distribution in particular. However, Mr. Mosley’s prior history of narcotics distribution was useful in determining whether circumstantial evidence was sufficient to prove the intent to distribute marijuana. Also, the jury could have reasonably excluded the hypothesis that Mr. Mosley only intended to purchase the marijuana given the sheer quantity of the marijuana seized, the large sums of cash, and the absence of paraphernalia indicating personal consumption.
 

 In this case we conclude that the evidence is sufficient to support an ultimate finding that the reasonable findings and inferences permitted by the evidence exclude every reasonable hypothesis of innocence. Despite evidence supporting some contrary inferences, a trier of fact reasonably could have found that Mr. Mosley had specific intent to distribute the marijuana in his possession.
 

 Therefore, this assignment lacks merit.
 
 Expert Testimony
 

 Mr. Mosley makes a two-pronged argument on appeal. First, he argues that the trial court erred in accepting Lieutenant
 
 *712
 
 Lloyd as an expert witness without first performing the “gatekeeping” function outlined by the United States Supreme Court in
 
 Daubert v. Merrell Dow Pharmaceuticals, Inc.,
 
 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) to determine whether the expert testimony is reliable. He argues that Lieutenant Lloyd had no scientific credentials and he did not use a scientific method in making his conclusions. Instead, his conclusions were based on conjecture. He specifically objects to Lieutenant Lloyds testimony Uthat he believed Mr. Mosley intended to distribute marijuana. Second, he argues that the trial court erred in allowing Lieutenant Lloyd to give opinion testimony outside his field of expertise. In this regard, he argues that the court erred in accepting him as an expert witness insofar as his competence to evaluate the evidence to determine whether the evidence met the criteria for possession or possession with intent to distribute. He asserts that only an expert in packaging, distribution, and retail sales of marijuana could testify in such manner.
 

 At trial, defense counsel objected when the prosecutor, during direct examination, asked Lieutenant Lloyd whether a “roach,” which remains after someone smokes a marijuana cigarette, is an item consistent with personal use of marijuana. Defense counsel argued that the prosecutor was attempting to elicit testimony regarding the ultimate issue of fact without first qualifying the witness as an expert. The prosecutor responded by conducting a voir dire of the lieutenant’s qualifications.
 

 The officer testified that he had extensive experience involving several thousand narcotics cases. He stated that he participated in undercover operations and attended numerous schools where he had been trained in the field. He had supervised others in narcotics-related events and at the time of trial was supervising them. He had taught in the training academy or in other forums regarding narcotics-related matters. In his experience as a police officer in the narcotics field he knew the difference between distribution, simple possession, and procession with intent to distribute cases. No one had ever previously attempted to qualify him as an expert in the field of narcotics.
 

 On cross-examination after the state’s tender of the witness as an expert in the field of narcotics-related investigations, the officer testified that he had not written any books or articles on the subject of use or distribution of narcotics. |12With regard to his undercover work, he had not infiltrated organizations that sell marijuana or other narcotics and stayed undercover for any length of time other than a day or two at the most. While in his undercover capacity he had never been a part of the inner core of any organization that distributed drugs or narcotics.
 

 In response to the prosecutor’s redirect on the tender, the officer testified that he was part of the Department of Justice Task Force involving narcotics. Thereafter, the prosecutor again tendered Officer Lloyd as an expert in the field of street level narcotics investigation. In response, defense counsel stated that he had no problem with qualifying the lieutenant as an expert in investigation. He stated, however, that he objected to the officer’s testifying as an expert in the quantities that would distinguish street level users from sellers.
 

 The trial judge qualified the officer, without objection, as an expert in the field of narcotics-related investigations. He deferred ruling on defense counsel’s objection to the officer’s testifying as an expert in the quantities that would distinguish street level users from sellers.
 

 
 *713
 
 After being qualified, Lieutenant Lloyd testified regarding the quantities of marijuana, which based on his experience, were consistent with distribution or simple possession. He also testified regarding the indicia for personal use.
 

 He stated that based on his experience in marijuana investigations, distribution of marijuana could involve as little as one joint or one cigarette if the person sold that quantity. He explained that on the other hand, if a person were not attempting to sell that amount, the case would be simple possession rather than distribution. He would be concerned that a person had the intent to distribute when he had a larger quantity than one joint or two joints. He stated that a joint would be indicative of simple possession because that amount would be for personal use. The officer testified that quantity in and of itself does not make a distribution case. |1sHe testified that some indications of a distributor are that a person would have a scale, packaging materials and other bags to transfer the greater amount into smaller amounts. He explained that cases of distribution or possession with intent to distribute are not limited to those cases in which baggies and scales and other such items are found. He stated that this case was consistent with possession with intent to distribute marijuana.
 

 Lieutenant Lloyd testified that he did not find any indications of personal consumption in this case. His determination to “charge” the defendants with possession with intent to distribute marijuana was based on the money that was on the defendants, the quantity of marijuana, and the fact that there was nothing else involving personal consumption in the car. He stated that the defendants could not explain where the money came from.
 

 For the first time on appeal, Mr. Mosley argues the trial court erred in accepting Lieutenant Lloyd as an expert witness without first performing the “ga-tekeeping” function outlined by the United States Supreme Court in
 
 Daubert
 
 to determine whether the expert testimony is reliable.
 

 The state responds that Mr. Mosley did not preserve the error because defense counsel accepted the officer as an expert in narcotics-related investigations. The state is partially correct. Defense counsel never requested a
 
 Daubert
 
 hearing. In
 
 Cheairs v. State DOTD,
 
 03-0680, p. 8 (La.12/3/03), 861 So.2d 536, 541
 
 (rehearing granted in part on other
 
 grounds), the Supreme Court recognized a distinction between challenging the reliability of the methodology used by the expert, which is addressed by a
 
 Daubert
 
 inquiry, and the expert’s qualifications to testify competently regarding the matters he intends to address.
 

 Here, at trial defense counsel never challenged the
 
 reliability
 
 of the methodology used. In fact, he accepted Lieutenant Lloyd as an expert in narcotics | ^investigations. He challenged Lieutenant Lloyd’s expert’s qualifications only as to his testifying regarding quantities that would distinguish street level users from sellers.
 

 Thus, defense counsel qualified his acceptance and he objected to any testimony as to drug quantities that would distinguish street level users from sellers. Although the trial judge never specifically ruled on the objection, he nonetheless allowed Lieutenant Lloyd to testify regarding this distinction. We view the trial judge’s actions in noting the objection and allowing the state to continue questioning Lieutenant Lloyd in the area of quantities that would distinguish street level users from sellers as a tacit overruling of defense counsel’s objection.
 

 
 *714
 
 Therefore, having failed to challenge the
 
 reliability
 
 of the methodology used by the expert that issue is not preserved for appeal.
 
 Accord: State v. Addison,
 
 05-378, p. 22 (La.App. 5 Cir. 12/27/05), 920 So.2d 884, 898,
 
 writ denied,
 
 06-1087 (La.11/9/06), 941 So.2d 36 (“[T]he defendant did not preserve this issue for appeal and this assignment of error will not be addressed.”).
 

 Even so, we disagree with Mr. Mosley’s assertion that Lieutenant Lloyd needed scientific credentials and a scientific method in order to testify as an expert about the differences between street sellers and users. In
 
 State v. Addison,
 
 05-378, pp. 18, 20 (La.App. 5 Cir. 12/27/05), 920 So.2d 884, 895, 897,
 
 writ denied,
 
 06-1087 (La.11/9/06), 941 So.2d 36, the defendant raised a similar argument. He argued that the trial court committed reversible error by accepting the officer as an expert because he did not have scientific credentials to prove his expertise, his assessments were based on total conjecture and he did not employ any kind of scientific method in arriving at his conclusions. Although we concluded that the issue was not preserved on appeal, we found that the defendant failed to show how |1Bthe officer’s qualifications were so lacking that he should not have been qualified as an expert in the area. We considered the officer’s training and experience, and found that the trial court did not abuse its broad discretion in finding the officer was competent to testify as an expert.
 

 We now turn to the issue that is properly before us. The issue is whether Lieutenant Lloyd was competent to testify regarding quantities that would distinguish street level users from sellers. In other words, could Lieutenant Lloyd give an expert opinion regarding packaging, distribution, and retail sales of marijuana when he was never specifically qualified as an expert in those areas? Stated differently, could Lieutenant Lloyd give an expert opinion regarding packaging, distribution, and retail sales of marijuana based on his qualifications as an expert in narcotics investigations?
 

 As a general matter, under La. C.E. art. 702, “if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify ... in the form of an opinion or otherwise.”
 
 State v. Higgins,
 
 03-1980, p. 33 (La.4/1/05), 898 So.2d 1219, 1239,
 
 cert. denied, Higgins v. Louisiana,
 
 546 U.S. 883, 126 S.Ct. 182, 163 L.Ed.2d 187 (2005). In reviewing an expert’s qualifications, “the trial judge is vested with wide discretion in determining the competence of an expert witness. Competence of an expert witness is a question of fact to be determined within the sound discretion of the trial judge; h[er] rulings on the qualifications of expert witnesses will not be disturbed in the absence of manifest error.”
 
 Id., quoting State v. Stucke,
 
 419 So.2d 939, 944 (La.1982)
 
 (citing State v. Drew,
 
 360 So.2d 500 (La.1978)).
 

 In
 
 State v. Grant,
 
 41, 745 (La.App. 2 Cir. 4/4/07), 954 So.2d 823,
 
 writ denied,
 
 07-1193 (La.12/7/07), 969 So.2d 629, the defendant argued that an agent l^was not properly qualified as an expert to give an opinion regarding the manner in which the cocaine was packaged, or that the small bags contained individual dosage amounts. The Third Circuit concluded that the contemporaneous objection rule precluded the defendant from raising this issue on appeal due to the fact that he did not object to the issue at trial. Even so, the court concluded that the record clearly supported the fact that the agent possessed the requisite specialized knowledge in order to offer an expert opinion regarding the dosage
 
 *715
 
 amounts in which cocaine is sold. The court explained that the agent testified that he had been a police officer for more than six years, assigned to the Caddo-Shreveport Narcotics Task Force for more than three years, and that he had worked undercover for the task force. 41,745 at 9-10, 954 So.2d at 832.
 

 In
 
 State v. Johnson,
 
 513 So.2d 832 (La.App. 2 Cir.1987),
 
 writ denied,
 
 519 So.2d 124 (La.1988), the defendant, similar to Mr. Mosley, agreed that the officer was an expert in narcotics investigations, but he objected to his testimony defining a “courier” and explaining how cocaine was distributed on the street. The Second Circuit found no merit to the assignment noting in part that the defendant did not explain how one could be an expert in narcotics investigation and not know these things.
 

 Likewise, in the instant ease, Mr. Mosley did not explain how one could be an expert in narcotics investigation and not know the distinction between street level dealers and sellers.
 

 Furthermore, Lieutenant Lloyd testified regarding his extensive experience in narcotics investigations. We hold that the officers extensive training, teaching, supervisory, and on-the-job experience were sufficient to qualify him to offer opinions regarding various aspects of narcotics distribution. His experience encompassed the consumption habits of marijuana users. Defense counsel fails to show that 117Lieutenant Lloyds testimony exceeded his status as a narcotics investigator or encroached upon the expertise which only a person qualified as an expert in packaging, distribution and retail sales of marijuana would possess. We conclude that the trial judge did not abuse his discretion in allowing Lieutenant Lloyd to give his expert opinion regarding the distinction between street level dealers and sellers.
 

 Accordingly, this assignment of error lacks merit.
 

 Previous Convictions
 

 Mr. Mosley complains that the trial court erred in allowing the state to introduce records of his prior narcotics convictions during its cross-examination of defense witness, Ms. Morgan. The state responds that defense counsel placed the defendant’s good character at issue upon questioning Ms. Morgan’s knowledge of whether or not the defendant sells drugs. Therefore, according to the state, defense counsel opened the door for the state to cross-examine the witness as to the defendant’s bad character. In his reply brief, the defendant contends that the state is incorrect because Ms. Morgan’s testimony does not qualify as general reputation testimony. Mr. Mosley asserts that the state never questioned the witness concerning the general reputation of the defendant in the community. Rather, defense counsel only questioned the witness concerning drug sales on the part of Mr. Mosley. Therefore, his character was never an issue.
 

 Under direct examination by defense counsel, Ms. Morgan testified she has known defendant for one and one-half years, and that she has never known Mr. Mosley to sell narcotics. Ms. Morgan testified that, to her knowledge, Mr. Mosley only smoked marijuana; he did not sell marijuana or any other drug.
 

 Before beginning his cross-examination of Ms. Morgan, the prosecutor requested a bench conference, during which he told the judge he believed defense counsel had opened the door to questions regarding Mr. Mosley’s prior drug |1sconvictions. Defense counsel responded that Ms. Morgan had only known Mr. Mosley for a year, and that the state was only entitled to question the witness about events that had occurred during that period. The judge
 
 *716
 
 concluded that defense counsel opened the door and he allowed the evidence of the prior drug convictions, over defense counsel’s objection.
 

 The prosecutor asked Ms. Morgan whether she would be surprised to learn that Mr. Mosley had pleaded guilty on February 5, 1996 and June 17, 1997 to the crimes of possession with intent to distribute cocaine and distribution of cocaine, respectively. Each time she responded that she did not know him then. The trial judge overruled defense counsel’s objections to the questions and his objection to the state’s introduction into evidence of certified copies of Mr. Mosley’s two prior convictions.
 

 A witness may be cross-examined on any matter relevant to any issue in the case. La.C.E. art. 611. Article 404 of the Louisiana Code of Evidence generally disallows the admission of evidence of a person’s character or a trait of his character for the purpose of proving he acted in conformity therewith on a particular occasion. However, as a limited exception to the general rule, Article 404(A)(1) allows admission of evidence of a pertinent trait of a defendant’s character — such as a moral quality — offered by an accused, or by the prosecution to rebut the character evidence. Under La.C.E. art. 405(A), a character witness may be cross-examined regarding relevant specific instances of conduct.
 

 In
 
 State v. Hurst,
 
 01-1817 (La.App. 4 Cir. 9/25/02), 828 So.2d 1165,
 
 writ denied,
 
 03-0709 (La.3/19/04), 869 So.2d 840, the defendant was convicted of second degree murder. The defendant’s mother was called by the defense as a character witness at trial. The defense counsel questioned the mother as to whether she had ever known her son to be violent or to carry a gun. She responded that the defendant wasjj^not violent, and that she had not seen a gun. On cross-examination, the prosecutor asked her about the defendant’s prior arrests for armed robbery, possession of cocaine and possession of marijuana, and his conviction for theft of goods valued at under $100.00.
 
 Hurst,
 
 01-1817 at 7-8, 828 So.2d at 1170.
 

 On appeal, the defendant argued the trial court erred in overruling his objections to the state’s questions regarding his prior criminal history. Citing La.C.E. art. 405, the Fourth Circuit held the questions were proper rebuttal to the character testimony elicited from the defendant’s mother. Similarly, by questioning Ms. Morgan regarding whether she knew Mr. Mosley to be a drug dealer, defense counsel in the instant case opened the door to rebuttal questioning by the state. Therefore, the questions were proper.
 

 Based on the foregoing, this assignment of error lacks merit.
 

 Error Patent
 

 The record was reviewed for errors patent. La.C.Cr.P. art. 920;
 
 State v. Oliveaux,
 
 312 So.2d 337 (La.1975);
 
 State v. Arceneaux,
 
 07-692, p. 13 (La.App. 5 Cir. 3/25/08), 983 So.2d 148, 155,
 
 writ denied,
 
 08-0892 (La.11/10/08), 996 So.2d 1067. This review indicates there are no errors patent that require corrective action.
 

 Decree
 

 For the preceding reasons, the conviction is affirmed.
 

 AFFIRMED.
 

 [1]
 

 . Although the minute entry/commitment indicates that Mr. Mosley was unrepresented by counsel at the time he was sentenced to serve 25 years, the transcript shows otherwise. According to the transcript, which prevails, Mr. Mosley was represented by attorney Harry Boyer.
 
 See: State v. Lynch,
 
 441 So.2d 732, 734 (La.1983) (Since there is a discrepancy between the minutes and the transcript, the transcript must prevail.).
 

 [2]
 

 . Under Rule 2-1.14 of the Uniform Rules-Courts of Appeal, any record lodged in this Court may be used, without necessity of duplication, in any other case on appeal or on writ.
 
 State v. Wallis,
 
 03-1415, p. 2, n. 3 (La.App. 5 Cir. 3/30/04), 871 So.2d 552, 553, n. 3
 
 citing State v. Bradley,
 
 02-1130 (La.App. 5 Cir.3/11/03), 844 So.2d 115, 118.
 

 [3]
 

 .
 
 Id.