NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-1330

STATE OF LOUISIANA

VERSUS

CHAD TYRONE WILLIAMS

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 303,978
HONORABLE THOMAS M. YEAGER, DISTRICT JUDGE

**********

PHYLLIS M. KEATY
JUDGE

**********

Court composed of James T. Genovese, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.

AFFIRMED.

James C. Downs
District Attorney
Brian D. Mosley
Attorney at Law
701 Murray Street
Alexandria, Louisiana 71301
(318) 473-6650
Counsel for Appellee:
    State of Louisiana

Alton Bates, II
Attorney At Law
Post Office Box 11076
Baton Rouge, Louisiana 70813
(225) 775-1200
Counsel for Defendant/Appellant:
    Chad Tyrone Williams

**KEATY, Judge.**

Defendant, Chad Tyrone Williams, was convicted by a jury of possession of a Schedule III controlled dangerous substance (CDS), hydrocodone. The trial court later sentenced him to five years at hard labor with credit for time served. The State filed a habitual offender bill, and, after a hearing, Defendant was adjudicated a fourth felony offender. Thereafter, his five-year sentence was converted to a twenty-year sentence at hard labor with credit for time served. He now appeals. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

On May 4, 2010, Ederick Coleman of the Metro Narcotics division of the Rapides Parish Sheriff's Office was "working the lower Third area" of Alexandria, an area known for drug activity. He had stopped to investigate a car that was obstructing the roadway in front of a house in the 2200 block of Willow Glenn Street. At trial, Officer Coleman identified Defendant as one of the three black males standing near the back of the car he was investigating.

Officer Coleman testified that as he was exiting the sheriff's office narcotics vehicle he had been patrolling in, the three men walked toward the house in front of which the car was parked. He and the other police officers announced their presence upon leaving their vehicle. Defendant walked toward the porch, reached in his right pocket, and tossed a green pill bottle onto the ground. Officer Coleman picked up the pill bottle and saw that it contained green pills labeled Watson 503, which he recognized as being hydrocodone, a Schedule III CDS. The bottle contained sixteen pills. The prescription was for Richard Norris, whom Defendant identified as his uncle. The bottle showed a quantity of 120 and a fill date of April 2, 2010. Officer Coleman and the other officers checked the identification of the three men, but none of them were Richard Norris. After being advised of his

*Miranda* rights, Defendant admitted to Officer Coleman that he threw the bottle on the ground, explaining that he got scared when he noticed that the officers were narcotics agents. Officer Coleman believed the narcotics vehicle to be highly recognizable, and he and the officers with him were all wearing shirts that identified them as sheriff's narcotics officers.

Officer Coleman searched Defendant and found $1,524, mostly in denominations of twenty, ten, and five dollar bills, with one or two one hundred dollar bills. He asked Defendant if he had a job, and Defendant replied that he was not working at the present time. Officer Coleman did not recall Defendant's response when asked what he was doing with that amount of money.

Lieutenant Michael Lacour of the Metro Narcotics Division testified that the day after his arrest, Defendant brought his uncle, Richard Norris, to his office. Mr. Norris gave Lieutenant Lacour a letter stating that Defendant had driven him to do errands on May 4, 2010. Defendant later called to tell Mr. Norris that he forgot his medicine in the car and that Defendant would bring it to him. In the letter, Mr. Norris apologized for his mistake of leaving his medication in the car and for any inconvenience that it may have caused. The letter was admitted into evidence as Defendant's Exhibit 1.

The drugs seized from Defendant were admitted into evidence as State's Exhibit 1. Rachal Plaisance, qualified as an expert in the field of forensic chemistry, examined the pills seized from Defendant and determined they were hydrocodone, a Schedule III controlled drug. Lieutenant Lacour testified the pills had a street value of five to seven dollars each.

Romantic Williams, Defendant's wife, testified she was in Atlanta, Georgia, on the day of this incident, awaiting Defendant's arrival the next day. Defendant had planned to fly to Atlanta and was on his way to purchase his ticket on the day

2

of his arrest. Although Mrs. Williams testified her husband "doesn't do drugs or deal with drugs," she clarified that she meant he had never had any dealings with "crack cocaine or something like that." She admitted that Defendant pled guilty to second offense possession of marijuana on November 3, 2009. She initially denied knowing about two pleas Defendant had entered on January 26, 1993, and August 13, 1991, regarding possession of Schedule II CDS. However, she later testified that her husband pled guilty to the prior crimes because he was guilty, and he did not plead guilty to this crime because he was not guilty.

Richard Norris testified that he had cancer in his nose and liver. Although his doctor prescribed for him four hydrocodone pills a day, Mr. Norris stated that he sometimes took two pills a day and sometimes took more than four pills a day, depending on the weather. On May 4, 2010, Mr. Norris was taking a total of fourteen pills a day, including pain medication. He explained that he carried his medication with him and that he misplaced it often. Mr. Norris identified State's Exhibit 1 as his prescription for hydrocodone.

At trial, Mr. Norris had a prescription bottle of hydrocodone dated June 3, 2010. He also had a document that he had obtained from his pharmacy the day before his testimony, titled "Insurance Statement," and listing all of the medications he took. The State objected to the introduction of the document on grounds it was hearsay. It further argued that the document had not been produced before it appeared during Mr. Norris's testimony and that the defense had failed to comply with the parties' joint discovery stipulation with regards to the document. The trial court sustained the State's objection and refused to admit the document as an exhibit, finding it to be "rank hearsay."

Mr. Norris admitted to prior convictions for receiving stolen goods and possession of drug paraphernalia. He did not remember being convicted of

3

possession of cocaine in 1996 and 1991 or being convicted of unauthorized use of a movable over $1,000 in 1996, explaining that he could not remember things from before he got sick.

Defendant testified that he was supposed to purchase a plane ticket to fly to Atlanta on May 4, 2010, but first had to drop off his two godchildren. He picked up Mr. Norris, who sat in the front seat of the car, along with Mr. Norris's grandchildren, who sat in the back seat next to his godchildren. After taking them several places, Defendant dropped off Mr. Norris and his grandchildren at Mr. Norris's home. As he was driving off, Defendant heard a pill bottle shaking and saw that one of his godchildren had gotten a hold of it. Defendant then snatched the pill bottle from the child, pulled over, and put the pill bottle in his pocket to keep it away from the kids. He then took the children to the home of their grandmother, Felicia Williams.

Defendant next drove to the address on Willow Glenn, where the incident took place, to see his cousin and her daughter. He parked the car, and the police arrived about three minutes later. Defendant was on the porch when he remembered having his uncle's pill bottle in his pocket. He dropped the pill bottle when the police approached asking to see what was in their pockets. Defendant asked Lieutenant Lacour why he was being arrested when his uncle left the prescription bottle in his wife's car and Defendant did not know that his uncle had left it. Defendant stated that he called his uncle and told him he had left the pills, and it was his intention to return the pills to Mr. Norris. He denied that he threw the pills or that he told Detective Coleman that he was afraid. Defendant explained that the day after his arrest, he did as "they told [him] to do" and brought his uncle with a signed letter to give to Lieutenant Lacour. According to Defendant,

4

Lieutenant Lacour assured him not to worry about it because "they" were going to handle it.

When asked where he got the money found in his pocket when arrested, Defendant testified he was collecting unemployment, he and his wife had just received a tax refund, and his wife was working at the time. His tax refund was about $3,100, and his unemployment benefits were approximately $7,000. Defendant testified that they kept money around the house for their children's sports and activities. Defendant reiterated that he had saved up money to purchase his plane ticket to Atlanta. Because of his arrest, however, he did not get to go to Atlanta, and he lost the money they had saved.

Defendant testified that he could not recall his entire criminal history but said his first offense was a guilty plea around 1989 for possession of Schedule II CDS. According to Defendant, he had been in a vehicle with the guys that had the drugs. He pled guilty to a second possession of CDS II charge in 1990 and to a third charge in 1991. He also pled guilty to a marijuana offense in 2009 and received a fine. Defendant stated that those drug offenses happened long ago and that he changed his life since that time. On cross-examination, the State got Defendant to admit to 1991 guilty pleas to possession and possession with intent to distribute cocaine, two 1993 guilty pleas to possession of cocaine, and a 1997 guilty plea to obstructing a highway. Regarding Defendant's 2009 guilty plea to possession of marijuana, the State noted that Defendant was arrested at the same time for possession with intent to distribute hydrocodone but did not plead guilty to that charge. Defendant denied ever selling pills, either in the past or when he was arrested, and he claimed that he was not taking the pills in his possession when he was arrested.

On October 11, 2010, Defendant was charged with possession of a Schedule III CDS, hydrocodone, with the intent to distribute, a violation of La.R.S. 40:968(A)(1). The charge was amended to possession of a Schedule III CDS, hydrocodone, a violation of La.R.S. 40:968(C), on April 5, 2011, immediately prior to trial. Defendant was found guilty and was sentenced to five years at hard labor. The State filed a habitual offender bill, and on May 2, 2011, Defendant was adjudicated a fourth felony offender and sentenced to twenty years at hard labor. Defendant now appeals, asserting that: 1) the trial court erred in refusing to allow into evidence Mr. Norris's insurance statement, thereby impairing Defendant's due process right to present a defense; 2) the verdict is contrary to the law and the evidence; and 3) he had ineffective assistance of counsel.

### ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After a thorough review, we have found no errors patent.

### *Sufficiency of the Evidence*

Defendant contends the verdict is contrary to the law and the evidence and that the evidence was insufficient to convict him of possession of a CDS. "When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence." *State v. Hearold*, 603 So.2d 731, 734 (La.1992). Thus, we will consider this assignment before the other assigned errors.

The standard of review in a sufficiency of the evidence claim is "whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged." *State v. Leger*, 05-11, p. 91 (La. 7/10/06),

6

936 So.2d 108, 170, *cert. denied*, 549 U.S. 1221, 127 S.Ct. 1279 (2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979), and *State v. Captville*, 448 So.2d 676, 678 (La.1984)). The *Jackson* standard of review is now legislatively embodied in La.Code Crim.P. art. 821. It does not allow the appellate court "to substitute its own appreciation of the evidence for that of the fact-finder." *State v. Pigford*, 05-477, p. 6 (La. 2/22/06), 922 So.2d 517, 521 (citing *State v. Robertson*, 96-1048 (La. 10/4/96), 680 So.2d 1165). The appellate court's function is not to assess the credibility of witnesses or to reweigh the evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So.2d 442.

Guilty knowledge is an awareness of illegal drugs in one's possession; it is a required element for a conviction of possession of a narcotic. *State v. Carter*, 07-1237 (La.App. 3 Cir. 4/9/08), 981 So.2d 734, *writ denied*, 08-1083 (La. 1/9/09), 998 So.2d 712; *State v. Goiner*, 410 So.2d 1085 (La.1982). "However, since knowledge is a state of mind, it need not be proven as fact, but rather may be inferred from the circumstances." *State v. Major*, 03-3522, pp. 8-9 (La. 12/1/04), 888 So.2d 798, 803.

> Circumstantial evidence involves, in addition to the assertion of witnesses as to what they have observed, a process of reasoning, or inference by which a conclusion is drawn. [*State v. Chism*, 436 So.2d 464, 469 (La.1983).] The trier of fact must decide what reasonable inferences may be drawn from the circumstantial evidence, the manner in which competing inferences should be resolved, reconciled or compromised; and the weight and effect to be given to each permissible inference. [*Id.*]
>
> Juries are not required to abandon common sense and life experiences when they enter a jury room.

*State v. Blazio*, 09-851, p. 7 (La.App. 5 Cir. 6/29/10), 44 So.3d 725, 729, *writ denied*, 10-1781 (La. 2/4/11), 57 So.3d 310 (quoting *State v. Mosley*, 08-1318,

pp. 6-7 (La.App. 5 Cir. 5/12/09), 13 So.3d 705, 709, *writ denied*, 09-1316 (La. 3/5/10), 28 So.3d 1002).

Louisiana Revised Statutes 40:991(A) provides, in pertinent part:

> An individual who claims possession of a valid prescription for any controlled dangerous substance as a defense to a violation of the provisions of the Uniform Controlled Dangerous Substances Law shall have the obligation to produce sufficient proof of a valid prescription to the appropriate prosecuting office. Production of the original prescription bottle with the defendant's name, the pharmacist's name, and prescription number shall be sufficient proof of a valid prescription . . . .

The defendant in *Blazio*, 44 So.3d 725, was convicted of possession of Alprazolam after his mother-in-law testified that the drugs belonged to her. She said she had dropped her prescription bottle containing Alprazolam, Soma, and other medication in the defendant's car the previous night. At trial, she produced prescriptions for all the medications but testified she had combined the three substances into the "travel bottle" found on the defendant. The fifth circuit affirmed the defendant's conviction because he did not "offer a reasonable, non-criminal explanation as to why he was in possession of the alprazolam pills without a prescription." *Id.* at 729. The court noted that the jury heard the testimony of defendant's mother-in-law, but had clearly discredited that testimony.

In the instant case, Defendant's conviction was necessarily based on credibility evaluations of the jury, coupled with their common sense appreciation of the circumstantial evidence. Quite simply, after considering the testimony and the evidence presented at trial, the jury did not accept the defense's explanation of why the drugs and the cash were in Defendant's possession. As an appellate court, it is not our job to second-guess the jury's credibility determinations or to reweigh the evidence. *See Smith*, 661 So.2d 442. After reviewing the record evidence in the light most favorable to the prosecution, we conclude that the jury could have

8

found that the State proved the essential elements of possession of a Schedule III CDS, including guilty knowledge, and that Defendant was guilty of the charged offense beyond a reasonable doubt. Defendant's second assignment of error lacks merit.

## *Exclusion of Mr. Norris's Insurance Statement*

Defendant contends the trial court impaired his right to due process by refusing to allow into evidence an "insurance statement to offer proof that the number of pills that were in the bottle were commensurate with the date that the prescription was filled." Defendant contends the statement corroborated other testimony about when the prescription was filled and how many pills Mr. Norris was instructed to take each day.

The trial court denied introduction of the evidence, concluding that it was irrelevant and hearsay. It considered the fact of Mr. Norris's prescription to be a defense available to him but not to Defendant. Thus, it determined that whether or not Mr. Norris had a prescription for the hydrocodone found in Defendant's possession was irrelevant to Defendant's case.

Relevant evidence is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." La.Code Evid. art. 401. "Evidence which is not relevant is not admissible." La.Code Evid. art. 402. Because it did not consider the fact of Mr. Norris's prescription to have any bearing on Defendant's guilt, the trial court ruled that the insurance statement was irrelevant and not admissible.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." La.Code Evid. art. 801(C). At trial, Defense counsel stated

9

that the insurance statement would show that Defendant was not guilty of "possession of CDS III with intent."[1] The trial court then commented, "how are [you] going to prove that with the printout? Because if so that's hearsay." The trial court found the statement to be "rank hearsay."

We have reviewed the trial transcript. Given the fact that a proper foundation was not laid for the admission of the document, we are convinced that the trial court correctly excluded the insurance statement in accordance with the Louisiana Code of Evidence. *See State v. Charles*, an unpublished opinion bearing docket number 11-628 (La.App. 3 Cir. 12/7/11) (wherein this court affirmed trial court's grant of a motion in limine to exclude a computer printout from a pharmacy purporting to show the defendant had a prescription for hydrocodone absent a proper foundation to authenticate printout for admissibility). Defendant's second assignment of error has no merit.

## *Ineffective Counsel*

Defendant argues that his counsel was ineffective because of lack of communication. As a general rule, the issue of ineffective counsel is more appropriately addressed in an application for post-conviction relief, where an evidentiary hearing can be conducted in the trial court. *State in the Interest of A.B.*, 09-870 (La.App. 3 Cir. 12/9/09), 25 So.3d 1012. However, where an ineffective assistance claim is raised on appeal, this court may address the merits of the claim if the record discloses sufficient evidence to rule on it. *Id.* Because the record is sufficient to reach a decision about Defendant's claim of ineffective counsel, we will consider Defendant's claim in this appeal rather than relegating it to post-conviction relief.

---

[1] In response to that statement, the trial court pointed out that the charge against Defendant had been amended on the morning of trial from possession of a Schedule III CDS, hydrocodone, with the intent to distribute, to simply possession of a Schedule III CDS, hydrocodone.

Defendant must satisfy a two-part test to prevail on his claim of ineffective assistance of counsel. He must first show that counsel's performance was deficient and, next, that the deficiency prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). "A court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Id.*, 466 U.S. at 695, 104 S.Ct. at 2069.

Defendant contends he "provided evidence" to his attorney to be introduced into the record, and he implies it was not admitted because of a joint stipulation previously made by the attorneys. It appears from the record the evidence to which Defendant refers is the printout of Mr. Norris's prescription medications. We have determined that the trial court did not err in excluding the printout from evidence.

Although Defendant claims his lack of knowledge about the joint stipulation "prevented him from being properly advised of the State's evidence against him," he fails to explain how he was prejudiced by this. He further fails to identify the State's evidence about which he was not advised. He argues that his attorney failed to communicate with him and "discover evidence which should have been admitted in trial," but he does not identify what evidence should have been admitted. Presumably, his argument refers to the insurance statement which we have already determined was properly excluded from evidence. Defendant claims his attorney's "behavior was contrary to the prevailing professional norms," but he fails to identify the "professional norms" that were violated.

Defendant has failed to identify any deficient representation or how he was prejudiced by it. Thus, he has failed to prove that he was a victim of ineffective counsel. Defendant's third assignment of error lacks merit.

## DECREE

Defendant's conviction for possession of hydrocodone, and his adjudication and sentence as a habitual offender are affirmed.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2–16.3.