**NOT DESIGNATED FOR PUBLICATION**

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2020 KA 0453

STATE OF LOUISIANA

VERSUS

DURELL JAMES COLLINS

Judgment Rendered: **FEB 2 4 2021**

* * * * * * *

On Appeal from the 20th Judicial District Court
In and for the Parish of East Feliciana
State of Louisiana
Trial Court No. 19-CR-295

Honorable Kathryn E. Jones, Judge Presiding

* * * * * * *

Samuel C. D'Aquilla
District Attorney
Julie Ralph
Haley Green
Molly G. O'Flynn
Assistant District Attorneys
Clinton, Louisiana

Attorneys for Appellant,
State of Louisiana

Heather Crabtree
Cy J. D'Aquilla, Jr.
New Roads, Louisiana

Attorneys for Defendant/Appellee,
Durell James Collins

* * * * * * *

**BEFORE: McDONALD, HOLDRIDGE, AND PENZATO, JJ.**

**PENZATO, J.**

The grand jury of East Feliciana Parish indicted defendant, Durell James Collins, with first degree murder, a violation of La. R.S. 14:30. He pled not guilty. Defendant filed a motion to quash on the grounds of improper venue. After considering the motion, the trial court granted it and provided written reasons for judgment. The State now appeals, challenging the trial court's ruling. For the following reasons, we affirm the granting of the motion to quash.

## STATEMENT OF FACTS[1]

On March 9, 2019, fishermen discovered the body of Timmy Daniels caught in a brush pile near the bank of the Amite River in East Feliciana Parish. The East Feliciana Parish Sheriff's Office ("EFPSO") took charge of the investigation. The body was located downriver of a bridge near the address of 131 Highway 37 in Clinton, Louisiana, and investigators believed this was where Daniels was put into the river. The body had apparently been "deceased for weeks," and an initial inspection of the body revealed an obvious gunshot wound to the forehead. The body was clothed in shorts, sweatpants, and tennis shoes, but with no shirt or jewelry. A palm print recovered from the body was determined to belong to Daniels, who had been reported missing by his mother to police on February 21, 2019.

An extensive investigation by the EFPSO followed, with nearly the entirety of the investigation occurring within East Baton Rouge Parish. The investigation revealed the involvement of defendant, Jesse Schiele, Edward Brooks, and a juvenile, J.B, in Daniels' death. The Baton Rouge Police Department had already

---

[1] The facts regarding the events at issue are taken from the offense reports and pleadings included in the record and the trial court's written reasons for judgment. We note that no authenticated evidence or live testimony has been entered into the record below. Nothing in this opinion should be construed as comment on the admissibility or weight of any potential evidence that may be introduced at trial. Moreover, we make no comment as to any other aspects of the case as part of our review of the trial court's ruling granting defendant's motion to quash.

2

developed Brooks as a suspect in Daniels' disappearance before the recovery of Daniels' body. Police investigation showed Daniels was shot "just above the eye line, near the center of the forehead" and in the upper right leg. These gunshot wounds were determined to be the cause of Daniels' death. An autopsy showed there was no water in Daniels' lungs or debris in his mouth, suggesting Daniels was dead before he was thrown into the Amite River.[2] The autopsy also revealed that the bullet fired into Daniels' forehead lodged in his brain.

Statements given to police provided a general history of the events leading to Daniels' death.[3] On the evening of February 10, 2019, Daniels, Brooks, and J.B. rode together in a vehicle driven by Schiele to defendant's residence on Ozark Street in Baton Rouge, Louisiana, to obtain marijuana. Upon their arrival, Daniels contacted defendant via social media to come outside, and then pulled a gun on defendant and demanded the marijuana. An exchange of gunfire ensued in which

---

[2] The State charged defendant, Schiele, and Brooks with the first degree murder of Daniels in the same bill of indictment and prosecuted them under the same docket number. All three defendants filed motions to quash on the grounds of improper venue, which motions were heard and granted by the trial court in the same proceeding. In addition to the instant appeal, the State also appealed the trial court's granting of Brooks' motion to quash in 2020 KA 0454 and Schiele's motion to quash in 2020 KA 0455.

Although the appellate record before us does not contain Daniels' autopsy report, the autopsy report is included in the appellate record in 2020 KA 0454. Pursuant to the provision of Uniform Rules of Louisiana Courts of Appeal, Rule 2-1.14 that "[a]ny record lodged in this court may, with leave of court, be used, without necessity of duplication, in any other case on appeal or on writ[,]" we have reviewed the autopsy report included in the appellate record in 2020 KA 0454 that is necessary to adequately review the issues raised in this appeal. See Berthelot v. Berthelot, 2017-1332 (La. App. 1st Cir. 7/18/18), 254 So.3d 735, 738 n.2; State v. Mosley, 2008-1318 (La. App. 5th Cir. 5/12/09), 13 So.3d 705, 708 n.2, writ denied, 2009-1316 (La. 3/5/10), 28 So.3d 1002.

[3] Schiele's account was the only one to claim the shooting took place at a different location. Schiele reported that he was driving in Baton Rouge and that Daniels and Brooks were in the vehicle with him when the occupant of a grey Honda Accord shot at his vehicle, striking Daniels and killing him. Though Schiele denied ever being at the Highway 37 bridge, cell phone records placed his phone there along with Brooks' phone on the night of the shooting.

Daniels was shot[4] in the head and leg, and defendant sustained a bullet wound in the left forearm and a bullet grazed his chest. From there, a decision was made to not bring Daniels to a hospital. Instead, Schiele drove to the Highway 37 bridge, where Daniels was stripped of some of his clothing and dumped into the Amite River. Blood found in the vehicle Schiele was driving the day of the homicide was forensically determined to be Daniels' blood.

J.B. gave several statements to police over the course of the investigation. In his first statement, J.B. stated he was at Brooks' rap studio with Brooks, Daniels, and another unknown person, when Daniels received a call and left in possibly a black Honda. Later, J.B. acknowledged being present during the robbery of defendant, but claimed he was dropped off in Baton Rouge after the robbery. J.B. stated that Daniels was alive and in obvious pain when J.B. exited Schiele's vehicle. In his final statement, J.B. told police he had not been truthful in the prior interviews, and that he was at the bridge when Daniels was thrown into the river. J.B. said that after arriving at the bridge, "when Daniels was removed from the vehicle, he was still making noises and was possibly still alive."

In its written reasons for judgment, the trial court found that the accounts of the incidents "consistently stated that a shooting occurred in Baton Rouge where Daniels sustained gunshot wounds to his head and right leg." The court also found persuasive the autopsy report indicating "there was no water present in Daniels' lungs nor was there any debris in his mouth." This led the court to conclude Daniels was more likely than not dead before being thrown in the river. Though the court recognized J.B. provided some inconsistent statements regarding his

---

[4] Defendant denied shooting Daniels or that he sold drugs, but he also made a statement to police that he did not see why he was being charged with murder "when he was robbed on his own property and that the two people that dumped [Daniels'] body got caught." Multiple bags of suspected marijuana and a rifle were recovered from defendant's bedroom at the Ozark Street address, in addition to another firearm and additional narcotics recovered from common areas of the shared residence. Entrance and exit bullet holes were found in the vehicle Schiele was driving.

4

belief that Daniels was breathing and making noises, it found they did not "outweigh the medical evidence in the autopsy report[.]" In conclusion, the court found "[n]o acts constituting the offense of murder or necessary elements of that charge occurred in East Feliciana Parish[,]" and that the State was "unable to meet its burden of showing by a preponderance of the evidence" that any element of the offense of first degree murder occurred in East Feliciana Parish.

### ASSIGNMENT OF ERROR: MOTION TO QUASH

In its sole assignment of error, the State contends the trial court erred in granting the defendant's motion to quash based on its finding that no elements of the offense of first degree murder occurred in East Feliciana Parish. The State argues that while the robbery of defendant was completed within East Baton Rouge Parish, Daniels' killing was not completed until a still-breathing Daniels was thrown into the Amite River in East Feliciana Parish, ensuring his death.[5] Finally, the State claims the events leading to the robberies and murder occurred in a moving vehicle that traveled through East Baton Rouge and East Feliciana Parishes. In short, the State maintains venue is proper in East Feliciana Parish because the evidence suggests that while the murder began in East Baton Rouge Parish, it was concluded in East Feliciana Parish.[6] At the heart of the State's argument is the assertion that J.B. told police he believed Daniels was still alive immediately before he was thrown into the river. Consequently, the State reasons, the effect of the criminal acts (i.e., the killing and the robbery) took place in East Feliciana Parish, making venue most properly there.

---

[5] The State asserts that two armed robberies occurred in this series of event: the armed robbery of defendant and the armed robbery of Daniels of his cellphone and clothes, which were taken before he was thrown over the side of the bridge in East Feliciana Parish. The State does not contend defendant is implicated in Daniels' robbery by Brooks and Schiele. Consequently, we will not address any claim venue was proper in East Feliciana relative to defendant as a result of Daniels' robbery.

5

Defendant claims Daniels was shot and killed in an "attempted armed robbery/drug deal gone wrong" while the vehicle involved was parked outside defendant's home on Ozark Street in East Baton Rouge Parish. At the core of defendant's argument is that the alleged crime was wholly completed in East Baton Rouge Parish. He argues the evidence supports the trial court's determination that the robbery was complete before Schiele drove away and that Daniels died before being thrown in the Amite River in East Feliciana Parish.

Venue is not an essential element of the offense; rather, it is a jurisdictional matter. See La. Code Crim. P. arts. 611(A) & 615. Objections to venue must be raised by a motion to quash to be ruled on by the court in advance of the trial. *State v. Ford*, 2017-0471 (La. App. 1st Cir. 9/27/17), 232 So.3d 576, 584, writ denied, 2017-1901 (La. 4/22/19), 268 So.3d 295. The burden is on the State to prove venue by a preponderance of the evidence. La. Code Crim. P. art. 615; *State v. Parker*, 2012-1550 (La. App. 1st Cir. 4/26/13), 116 So.3d 744, 749, writ denied, 2013-1200 (La. 11/22/13), 126 So.3d 478.

Venue is a factual question and, on appeal, review is limited to whether the State submitted some evidence of proper venue. *State v. Skipper*, 387 So.2d 592, 594 (La. 1980). As such, review of the issue on appeal is not concerned with weighing the sufficiency of the evidence presented by the State. *State v. Eason*, 2019-0614 (La. App. 1st Cir. 12/27/19), 293 So.3d 61, 72. When a trial court rules on a motion to quash, factual and credibility determinations should not be reversed on appeal in the absence of a clear abuse of the trial court's discretion. However, a trial court's legal findings are subject to a *de novo* standard of review. *State v. Williams*, 2018-1795 (La. App. 1st Cir. 5/31/19), 2019 WL 2317162, at *5, writ

---

[6] In the "External Examination" section of the autopsy report, it states the finding that the nares and oral cavity are "free of foreign material and abnormal secretions." In the "Respiratory System" section, the report states the finding that "[t]he upper airway is clear of debris and foreign material."

denied, 2019-01028 (La. 1/14/20), 291 So.3d 682; see also *State v. Love*, 2000-3347 (La. 5/23/03), 847 So.2d 1198, 1206; *Eason*, 293 So.3d at 72.

Louisiana Code of Criminal Procedure article 611 provides in pertinent part:

A. All trials shall take place in the parish where the offense has been committed, unless the venue is changed. If acts constituting an offense or if the elements of an offense occurred in more than one place, in or out of the parish or state, the offense is deemed to have been committed in any parish in this state in which any such act or element occurred.

B. If the offender is charged with any criminal homicide enumerated in R.S. 14:29 or any other crime involving the death of a human being and it cannot be determined where the offense or the elements of the offense occurred, the offense is deemed to have been committed in the parish where the body of the victim was found.

Louisiana Code of Criminal Procedure article 611 does not refer to any act related to the offense; it refers to "acts constituting an offense" or the "elements of an offense." Where a body is found, and it is unknown where the actual killing took place, proper venue lay in the parish where the body of the victim was discovered. La. Code Crim. P. art. 611(B). Further, the place where the effect of the criminal conduct occurs is an important consideration in determining whether the charged criminal acts have substantial contacts with the venue chosen for prosecution. *State v. Hayes*, 2001-3193 (La. 1/28/03), 837 So.2d 1195, 1199 (per curiam).

The trial court, the State, and defendant all cite this court's recent decision in *State v. Gross*, a case involving a killing alleged to have occurred in East Feliciana Parish, but which factually had substantial connections to East Baton Rouge Parish. *State v. Gross*, 2018-1014 (La. App. 1st Cir. 2/25/19), 273 So.3d 317, writ denied, 2019-00498 (La. 9/17/19), 278 So.3d 972. In *Gross*, the defendant succeeded in quashing the charges filed in East Baton Rouge Parish where there was a question as to where the victim actually died. Though the victim's body was found in the trunk of his own car in Baton Rouge, Gross told police that the victim had been run over and struck in the head with a hammer by another individual

7

about one hundred yards inside East Feliciana Parish.[7] Gross directed police to the scene, and evidence was recovered that tended to confirm his story. Gross, who admitted to assisting the assailant in putting the victim in the trunk of the victim's car in East Feliciana Parish, told police he believed the victim was already dead due to the amount of blood he observed. *Gross*, 273 So.3d at 319-20. Investigators learned from the forensic pathologist that the "massive trauma to the head and neck areas" of the victim were the "most fatal" of his injuries. *Gross*, 273 So.3d at 323.

In *Gross*, the trial court granted the motion to quash, finding the State had not shown by a preponderance of the evidence that the victim was either assaulted or died within the borders of East Baton Rouge Parish. On review, this court recognized that before Gross informed police of the specifics of the victim's murder, venue would have been proper in East Baton Rouge Parish. *Gross*, 273 So.3d at 322; see La. Code Crim. P. art. 611(B). However, after Gross made verifiable claims regarding the manner of the victim's death, venue was most proper in East Feliciana Parish. *Gross*, 273 So.3d at 322-23; see La. Code Crim. P. art. 611(A). Additionally, given the fact the victim's death could have occurred over a very limited time and location, the court determined any analysis contemplating the crime happening in a vehicle travelling through multiple parishes was not necessary. *Gross*, 273 So.3d at 321-22; see La. Code Crim. P. art. 612. Finally, given the fact that venue is a question of fact, this court found the State had not established an abuse of the great discretion afforded to the fact finder's determination. *Gross*, 273 So.3d at 323.

Here, the State is similarly correct when it argues that when Daniels' body was found in the Amite River, venue was proper in East Feliciana Parish.

---

[7] Louisiana Code of Criminal Procedure article 614 provides that "[a]n offense committed on the boundary line of two parishes or within one hundred feet thereof is deemed to have been committed in either parish."

However, as in *Gross*, a subsequent investigation revealed the most likely place of Daniels' death was in another parish. We cannot say the trial court abused its considerable discretion when it found that, more likely than not, after being shot in the head, Daniels died while he was still inside East Baton Rouge Parish.[8] This conclusion is supported by the finding in the autopsy report that there was no water in Daniels' lungs and no debris in his mouth. It is certainly not unreasonable for the trial court to have concluded the more likely scenario was a completed offense in East Baton Rouge Parish. It is worth noting that but for the discovery of Daniels' body, the investigation of his murder was conducted entirely within East Baton Rouge Parish, albeit mostly by the EFPSO. Consequently, the State fails to show a clear abuse of the trial court's discretion in making the factual determination that Daniels was more likely than not shot and killed within East Baton Rouge Parish. Additionally, even assuming defendant can be convicted of the charged offense of first degree murder premised on the underlying armed robbery,[9] by all accounts, his robbery occurred entirely at the Ozark Street address in East Baton Rouge Parish.

Accordingly, we affirm the trial court's granting of defendant's motion to quash.

**RULING ON MOTION TO QUASH AFFIRMED.**

---

[8] The court also takes judicial notice that the most direct route between the Ozark Street address and the Highway 37 bridge is just over 26 miles. The East Feliciana Parish line is about 25 miles from Ozark Street.

[9] See, e.g., *State v. Lutz*, 2017-0425 (La. App. 1st Cir. 11/1/17), 235 So.3d 1114, 1127, writ denied, 2017-2011 (La. 8/31/18), 251 So.3d 411.